## WILLIAM DAVENPORT v. THE CITY OF OTTAWA.

LOTTERY, *What Constitutes—Prizes to Stimulate Trade.* The defendant was a partner in the firm of D. L. & Co., operating a large dry-goods store in the city of Ottawa. Said firm placed in its window a locked box, with a glass front, containing $25 in bills, and advertised that all persons buying goods in their store, and paying therefor 50 cents or more, would be given a key, and one and only one key would be given out which would unlock the box; that the person receiving the key which would unlock the box would be given the $25 from it. The defendant sold goods at the usual and ordinary prices, without extra charge on account of said key, to divers persons, for 50 cents and more, and gave to each of said persons a key, to which was attached a card stating in substance the above offer. *Held,* That such trans-

actions were in effect sales of merchandise and lottery tickets for an aggregate price, and that a conviction therefor under a city ordinance was right.

*Appeal from Franklin District Court.*

THE defendant, *William Davenport,* was arrested and brought before the police court of the city of Ottawa, charged with having permitted gambling to be carried on in a store kept by him in Ottawa, and with having offered for sale and sold lottery tickets. He was found guilty by the police judge, and fined $5 on each of the two counts in the information. From this conviction he appealed to the district court, where a jury was waived, and the cause submitted to the court on the following agreed statement of facts:

"1. At all times hereinafter mentioned, the defendant was and is a partner in the firm of Davenport, Lathrop & Co., which firm is now and for several years last past has been operating a dry-goods store in good faith at No. 228 South Main street, Ottawa, Franklin county, Kansas; that they have now and at all times have had a large and first-class stock of dry goods, of the value of more than $10,000, and that they had in connection with said stock a good stock of millinery goods.

"2. Said firm, some days prior to October 19, 1894, placed in its window a box about 18 inches long by 8 inches wide, with a glass front, in which box said firm placed, so that the same could be seen, $25 in United States bills. The said box is and was locked. The said firm then advertised and offered to the public that all persons buying goods in their store to the amount of 50 cents or more, and paying for the same, would be given a small iron key, and that the person getting the key that opened said box would receive the $25, there being but one key given, or to be given out, that would in fact unlock said box, and that no member of said firm or employé in said store should be entitled to or receive a key; that any person holding a key is permitted to try to unlock said box therewith at any time between December 26 and 31, 1894.

"3. On October 19, 1894, defendant sold to sundry persons dry goods out of said store for 50 cents and more, and received the pay therefor, and upon selling said goods and receiving such pay, he gave to such customers keys, that they might at the proper time try to unlock said box; to each of

said keys was attached a card having printed thereon as follows:

"$25 FREE.        IN UNITED STATES NOTES.        $25 FREE.

"We have placed in our window a glass money box containing $25 in United States notes. We will give a key to every purchaser of 50 cents or more. One key only will unlock the box. This may be the one. Keys may be tried any time between December 26 to 31, inclusive, 1894. Every one holding a key will be permitted to try and unlock the box, and the person holding the key that will unlock the box will be presented with the contents, $25, absolutely free, without restrictions or reserve. Keys will not be noticed unless attached to the original tag. No employé allowed to have any keys.               DAVENPORT, LATHROP & CO.,

"One-price house. (Read the other side.) Ottawa, Kas.

"$25 FREE.                                      $25 FREE.

"Davenport, Lathrop & Co. stand alone. No matter how low goods are priced elsewhere, you can always buy them cheaper of Davenport, Lathrop & Co. Visit our store, and get a key that may be worth $25 to you. After trying keys, please leave them at the store. (Read the other side.)

"4. At the time defendant delivered said keys and cards to said customers, he did not know whether said keys, or either of them, would unlock said box.

"5. The said firm and said defendant made no extra charge by reason of said keys, but. sold the goods in the usual way at the same price that such character of goods had been and was being by said firm and other merchants sold in the market in said city at and prior to the time that said firm began giving out said keys. The said firm made no charge directly or indirectly for said keys, or for the privilege to which the holders of said keys were entitled, unless the purchase and payment of said goods be construed to be a charge."

The sections of the ordinance on which the prosecution was based are as follows:

"SEC. 40. It shall be unlawful for any person or persons to sell or offer for sale, in the city of Ottawa, Kas., any lottery ticket or part thereof, or to print and publish in said city any advertisement of any lottery, or of the sale of any ticket or part thereof in any lottery. Any person who shall do any of the acts declared unlawful in this section shall, upon con-

viction thereof in the police court, be fined in any sum not exceeding $100, or by imprisonment in the city prison not exceeding 90 days, or by both such fine and imprisonment."

"ART. 2, SEC. 13. It shall be unlawful for any person or persons to set up, open, keep or maintain any gaming or gambling house in the city of Ottawa, or lease or let any house or other building for the purpose of setting up or keeping therein gaming or gambling devices, or permit any description of gambling, or playing any game of chance for money, goods or other valuable thing, in any dwelling house, store, booth, tent, shop or other tenement, building or place used, owned or occupied by any such person, and any person who shall be guilty of any act declared unlawful in this section shall, on conviction, be fined in any sum not exceeding $100."

The district court also found the defendant guilty, and assessed the same punishment. From this judgment he appeals.

*Smart & Muesse*, for appellant:

Did the defendant sell, offer for sale or cause to be sold lottery tickets? We submit that he did not. Out of the many definitions given by courts and law writers for the term "lottery," this court has adopted that of Folger, J., in *Hull v. Ruggles*, 56 N. Y. 424: "Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery." *The State, ex rel., v. Mercantile Association*, 45 Kas. 354. There are, then, two indispensable elements in the above definition: (1) A pecuniary consideration paid; (2) a determination by chance what and how much he who pays the money is to have for it. The pecuniary consideration must be paid in whole or in part for the chance, because that is the evil sought to be remedied —"the payment of small sums of money in the hope of gaining a larger amount."

The element of consideration for the chance is entirely lacking in this case. Agreed statement, fifth paragraph. But it will be argued by counsel that the money paid for goods was

paid as well for the chance. Not so. The purchaser could not buy a chance without knowing it. If he bought and paid for the goods, and afterwards the merchant gave him that which represented a chance, it cannot be said that he bought the chance; the chance, in that case, was not the inducement that led the purchaser to part with his money.

The city relies largely upon *The State v. Mumford,* 73 Mo. 647, but in that case the first utterance of the court is: "Proprietors of a new paper offered as an inducement," etc. Of course, in that case, the subscription was the consideration, and it was sufficient. We are not called upon in this case to determine the question, Could the defendant, with the scheme he had, violate the ordinance by selling a lottery ticket? but the question is, Did he, as appears from the agreed statement of facts?

*Hudelson v. The State,* 94 Ind. 426, 48 Am. Rep. 171, is not in point. That case was tried upon the theory that the chance was what induced the purchase of the goods. Not so in the case at bar. Here it is expressly agreed that there was no consideration for the chance, either directly or indirectly, unless the purchase and payment of goods, purchased and paid for before the purchaser knew anything of the chance, can be construed to be a consideration. In the case at bar, the defendant either made a sale or he did not; if he did not, he is not guilty. We submit he made no sale; and then the question, Was the scheme a lottery? becomes a secondary matter. But counsel may urge that the hope of inducing people to visit his store and thereby increase business was a consideration for giving the key, and thus making out a sale. That could not be for two reasons: First, we have agreed that it was not; second, such benefits are too remote. *Cross v. People,* 36 Am. Rep. 292 (18 Colo. 321); *Yellow-Stone Kit v. The State,* 88 Ala. 196; 16 Am. Rep. 38, with extensive notes. We call special attention to the last two cases cited.

The giving away of property, even by chance, is no crime. *Long v. The State,* 74 Md. 565; 28 Am. Rep. 268; *People v.*

*Gidson,* 109 N. Y. 339; 4 Am. Rep. 465; *The People v. Payne,* 3 Denio, 88; *The State v. Clark,* 33 N. H. 329.

*H. A. Richards,* for appellee:

There are but two important questions for consideration in this case: (1) Is the scheme as advertised by the firm, as shown by ¶ 2 of the agreed statement of facts, and by "Exhibit A" of said statements, a lottery? (2) If the first question be answered in the affirmative, then did the acts of defendant as shown by the statement constitute a sale of lottery tickets?

The defendant was charged and found guilty of another offense; but if guilty of selling lottery tickets, it follows, as a matter of course, that he was guilty of permitting gambling in his place of business. Desty, Cr. Law, § 101; 2 Whar. Cr. Law, § 1465, and notes.

As to the first question, see *The State, ex rel., v. Mercantile Association,* 45 Kas. 351; *Long v. The State,* 28 Am. Rep. 268; *United States v. Zeisler,* 30 Fed. Rep. 499.

In *The State v. Mumford,* 39 Am. Rep. 532, the supreme court of Missouri held that where the proprietors of the Kansas City *Times* offered as an inducement to subscription and gratuitously gave to every new subscriber a ticket entitling him to participate in a distribution of prizes by lot, the scheme was a lottery. See, also, *Hudelson v. The State,* 48 Am. Rep. 171; *Hall v. Ruggles* (a prize-package case), 56 N. Y. 425; *Bell v. The State,* 37 Tenn. 507; *Thomas v. People,* 59 Ill. 160; *United States v. Wallace,* 38 Cent. L. J. (Idaho), 237; 2 Whar. Cr. Law, § 1491, and cases cited.

If, from the agreed statement of facts, the court finds that the scheme which the firm advertised is a lottery, then we submit that the second question, Did the defendant sell lottery tickets? must be answered in the affirmative.

The opinion of the court was delivered by

ALLEN, J.: The only question presented for our consideration by the record in this case is, whether the defendant

sold lottery tickets. Counsel for appellant contend that there are two indispensable elements in the offense: "(1) A pecuniary consideration paid; (2) a determination by chance what and how much he who pays money is to have for it." It is urged that the agreed facts show that the defendant was a merchant conducting a legitimate business, with a large stock of general merchandise, which he sold for the usual and ordinary prices, and that the scheme of giving the money in the box to whomsoever should chance to get the key that would unlock the box was merely in the nature of an advertisement, to draw attention and custom to the defendant's store; that, inasmuch as the defendant received no more in any instance for his goods than their fair and usual market value, no compensation was paid for the chance, but that the keys to the box and the chance to obtain a prize were a free gift to his customers, which he had a perfect right to offer. This argument, while plausible, is not sound. The defendant advertised his goods for sale. At the same time he advertised that, to every purchaser of goods to the value of 50 cents or more, paying in cash therefor, a key would be given, and that the person receiving the key which would unlock the box should receive the $25 as a free gift. Each sale, then, was a sale, not of the goods, but of a chance to obtain $25.

In this instance, it may be conceded that the main purpose of the defendant was to increase his legitimate business by this scheme, and that the sale of merchandise was not used merely as a cover for conducting a lottery. The purpose of the defendant undoubtedly was to attract attention and stimulate trade at his store; but this case must be determined by the legal principles applicable to it. Suppose that, instead of a large stock of general merchandise, on which only moderate profits are made, the defendant kept only such articles as usually bear a very high percentage of profit, and, instead of offering $25, had offered $1,000, on precisely the same terms as this $25 was offered: could anyone doubt for a moment that those who are inclined to invest small sums for the purpose of gaining large ones would be likely to purchase articles for

which they had no special need, merely with the hope of gaining the prize offered? Though the goods, in such a case, should be sold only at the regular retail price, the main business of the defendant would become that of selling chances to draw the $1,000, rather than merchandise for a legitimate profit. The key, with the card attached, was in substance and effect a lottery ticket. Purchasers were given to understand, whether truthfully or not does not affect the case, that one key, and only one of those given out, would unlock the box, and that whoever chanced to get the proper key would get the money. It is said that no element of chance existed, because the right of the purchaser to obtain a prize was, in fact, absolutely determined the instant he received the key. If the key fitted the lock, the money was his from that instant. If it did not, it was not his.

This contention is not sound, though specious. Neither buyer nor seller was supposed to know which was the true key to the box, and the fact would only be actually determined when the trial was made at the time appointed to unlock the box. But, even if we assume that the chance was determined when the sale was made, it would be equally a lottery, for the fortunate person would at once obtain a right to the prize, though he could not in fact get it until the time appointed. The unfortunate purchaser would at once receive his merchandise and his blank in the lottery. No sound distinction exists between the principle involved in this case and that in the case of *The State, ex rel., v. Mercantile Association*, 45 Kas. 351. The case of *The State v. Mumford*, 73 Mo. 647, is also directly in point. Prizes were offered to subscribers to the Kansas City *Times*, each subscriber receiving a ticket entitling him to participate in a drawing of prizes, and no extra charge above the ordinary subscription price being made. The supreme court of Missouri held this a lottery, and that subscribers to the newspaper bought at the same time, and for one and the same consideration, the newspaper and the ticket in the lottery. So in this case, the purchaser, for one undivided price, bought merchandise and a ticket in

the scheme which was to determine who should have the prize.    These views are also upheld in the cases of *Hudelson v. The State*, 94 Ind. 426; *United States v. Zeisler*, 30 Fed. Rep. 499; *Bell v. The State*, 5 Sneed, 507; *Thomas v. The People*, 59 Ill. 160.    Judgment affirmed.

All the Justices concurring.