Belcher, C. C.
The petitioner was accused of selling a lottery ticket in the city of San Francisco, and was tried and convicted. The complaint against him contained a copy of the supposed lottery ticket; and it appears therefrom to have been one of seventy thousand bonds or obligations, for one hundred francs each, which were issued by the city of Brussels in 1853. The bond in question is numbered 387, and provides that the holder shall be entitled to the repayment of his capital, and interest thereon at the rate of three per cent, payable annually. It further provides, in effect, that two hundred of the bonds or obligations shall become due and payable at the end of the first year, two hundred and six at the end of the second year, and two hundred and twelve at the end of the third year, etc., all of them payable in sixty-six years.
*631 To ascertain what particular bonds are payable in any one year, a drawing is to be had on the thirty-first day of December of each year, or if that day be a Sunday or holiday, on the evening before, and the bonds bearing the numbers drawn are then to be paid on the thirty-first day of March following. . It is further provided that the holders of the bonds bearing the first forty numbers drawn shall be paid premiums, ranging from twenty-five thousand francs for the first down to two hundred francs for the last. '
Is the instrument above described a “ ticket, chance, share, or interest in or depending upon the event of any lottery,” the sale of which in this state is prohibited by sections 319 and 321 of the Penal Code?
In Kohn v. Koehler, 96 N. Y. 362, a similar question was before the Court of Appeals of New York. In that case, the bond in question was one of certain bonds issued by authority of the government of Austria, and by which that government obligated itself to pay the principal of the bonds with interest and a premium named, and also any additional sum which the holder might become entitled to in case the number of his bond drew a prize in a drawing to be had as specified.
The court said: “The evident object and purpose of the government in issuing the bonds was to obtain money for its own use and benefit. According to the true interpretation of the instrument, the government, upon receiving the money, promises to pay the principal, interest, and premium named, and in addition any sum which may be drawn by the holder of the bond, in accordance with the rules and regulations indorsed thereon. This additional sum depends upon a contingency, which is to be decided by lot or chance. Independent of this, the amount and the terms are fixed by conditions of the bond. The substance of the transaction relates to a loan of money to the government, and the provision made for its payment. This is the main object and purpose for *632 which authority was given to issue the bonds, and they were disposed of evidently having this in view. The provision by which upon a certain contingency the holder of the bond might receive an additional sum was no doubt an inducement held out for the purpose of obtaining money on the same, but it did not constitute the main feature and the substance of the transaction' between the government and the purchaser of the bond. It was a mere appendage and an incident to its main purpose, by means of which the holder might by chance receive a larger sum than the principal and interest which the bond itself provided for.
“In loaning money upon these bonds, the holder thereof ran no risk of loss, if the principal and interest were paid, and he took the chances which might arise in case it should be determined by lot that his bond was entitled to a larger sum than the principal, interest, and premium, which he was sure to get in any event. While this latter privilege depended upon chance, it cannot, we think, be held upon any sound theory that it converted the bonds into lottery tickets, and imparted to the loan which was made thereon the character, object, and accompaniments of a mere lottery scheme.
“A government bond of the character of the one involved in this action does not come within the mischief ' intended to be remedied, or within the scope and purpose of the enactments against lotteries. Such an instrument is not named, nor is it within the purview of the statute or the intention of the law-makers. These bonds have been issued by several of the governments of other countries, and in no sense can they be regarded as being within the inhibition of the statutes of this state, which were intended to suppress lotteries and to prevent citizens from indulging in this species of gambling. The bond in question was an evidence of debt, and a public security of a foreign government, exposed *633 for sale the same as other securities upon which money is loaned, and its sale did not violate the provisions of the statute already cited. It was not raffled for or distributed by lot or chance, and it cannot be said that the purchase of the same by the plaintiff was within the provisions of section 22 of 1 Revised Statutes, 665.”
It is apparent that the reasoning in that case exactly covers this case, and the conclusions reached, we think, are correct.
It follows that the petitioner should be discharged from custody.
Foote, C., and Searls, C., concurred.
The Court.
For the reasons given in the foregoing opinion, it is ordered the petitioner be discharged.
Myrick, J., dissented.