## UNITED STATES v. WALLIS.

(District Court, D. Idaho, S. D. October 7, 1893.)

### No. 27.

1. POST OFFICE—NONMAILABLE MATTER—LOTTERIES.

A scheme for increasing the circulation of a newspaper, whereby all paid-up subscribers receive numbered tickets corresponding to numbered coupons, which are drawn from a box by a blindfolded person, prizes to be given to the holders of certain tickets, is a lottery, (26 Stat. 465,) notwithstanding that every purchaser of a ticket is repaid its cost by receiving the paper.

2. LOTTERIES—DEFINITION.

The word "lottery" embraces the elements of procuring through lot or chance, by the investment of money or something of value, some greater amount of money or thing of value.

At Law. Indictment of James H. Wallis for mailing a lottery advertisement. On demurrer to indictment. Overruled.

Fremont Wood, U. S. Atty.

James H. Hawley, for defendant.

BEATTY, District Judge. The defendant has interposed his demurrer to an indictment based on section 3894, Rev. St., as amended by the act of September 19, 1890, (26 Stat. 465,) wherein is the provision: "Nor shall any newspaper, circular, pamphlet or publication of any kind, containing any advertisement of any lottery or gift enterprise of any kind, offering prizes, dependent upon lot or chance * * * be carried in the mails." Also it is further provided that any person who shall knowingly deposit in or send through the mail any such forbidden matter shall be deemed guilty of a misdemeanor. The indictment has two counts, by the first of which it is charged that defendant did knowingly deposit in the United States mail a newspaper called "The Post," which contained an advertisement as follows, to wit:

"Five More Days. Arrangements Completed for Thursday's Event. The Participants of the Drawing. List of Subscribers Entitled to Participate. Five More Days Left for Delinquents to Pay Up. Next Thursday the grand drawing for the elegant Eldridge sewing machine to be given away to subscribers to the Post will take place at noon that day at this office. The plan upon which the drawing will be conducted will be as follows: Tickets, upon which will be printed numbers corresponding with the numbers on the coupons held by the paid-up subscribers, will be placed in a covered box. The fifteenth number drawn from the box will be the lucky number, the subscriber holding which will be entitled to the machine. The person drawing the numbers from the box will be blindfolded, so as not to permit of any partiality, were such a thing possible. As the numbers are drawn from the box they will be called out, and then recorded. To make the drawing more interesting, the subscribers holding the last fifteen numbers taken from the box will each receive a copy of the World's Almanac. People indebted to the Post can receive a chance to the drawing any time between now and noon next Thursday by paying up their indebtedness. Herewith are the names of subscribers entitled to participate in the drawing, with numbers held by each. If there should be any errors, we would be glad to be informed of the fact."

The statute is directed against the use of the mails for the conveyance of any advertisement of "any lottery or gift enterprise of any kind." This language is sufficiently comprehensive to include any scheme in the nature of a lottery. It cannot be deemed necessary to here enumerate the many similar definitions given by lexicographers and courts of the term "lottery." It may be sufficient to say that it embraces the elements of procuring through lot or chance, by the investment of a sum of money or something of value, some greater amount of money or thing of greater value. When such are the chief features of any scheme, whatever it may be christened, or however it may be guarded or concealed by cunningly devised conditions or screens, it is, under the law, a lottery. It has been said that "in law the term 'lottery' embraces all schemes for the distribution of prizes by chance, such as policy-playing, gift exhibitions, prize concerts, raffles at fairs, etc., and includes various forms of gambling." What, then, is the scheme described by the advertisement referred to? It is therein denominated a "drawing," in which each paid-up subscriber for the paper is entitled to a numbered ticket, for which there is a corresponding numbered coupon placed in a covered box, which is to be drawn therefrom by a blindfolded person, and the person holding the ticket correspond-

ing to the fifteenth coupon drawn is entitled to the chief prize, and all the last 15 coupons drawn also represent prizes. It is suggested that, as each ticket holder pays therefor the subscription price of the paper, and gets the paper for a year, which is presumed to be an equivalent in value, the transaction is not a lottery. But the purchasers of tickets do not all receive the same; on the contrary, there are 16 who receive more than the others, and more, too, than the value paid for their tickets, and through the chance of a drawing. It cannot be supposed that the chief purpose in purchasing a ticket is to obtain the paper, for that could be done in the usual way without tickets. The evident object of the offer was to increase the number of subscribers by awarding prizes to those who should have the fortune to draw them, and the hope of so drawing them was the inducement to procure tickets by subscribing for the paper. Certainly we have here all the elements of a lottery,—the tickets, the prizes, and drawing them by chance. That the prizes may not be of great value does not change the principle, or make it less a lottery. The only difference between this scheme and the usual lottery is that in this every purchaser of a ticket is repaid its cost by receiving the paper for a year. That this does not make it any the less a lottery has been too long clearly determined by the courts to now merit discussion.

It is well settled that all so-called gift enterprises and all similar schemes in which each purchaser of a ticket is given something of value equal to its cost, when connected with a drawing by chance for prizes to be received by some and not others, are lotteries; and so is held even the familiar scheme of selling prize candy boxes. If any doubt can exist that this publication must be held one concerning a lottery, and within the inhibition of the statute, such doubt must be removed by an examination of the latest decision of the supreme court upon this subject,—that of Horner v. U. S., 147 U. S. 449, 13 Sup. Ct. 409. The Austrian government, to facilitate the sale of its bonds, while selling them at their face value, fixed the time of their repayment and the awarding of prizes of different value to purchasers by drawings by chance, to take place at different stated times. The court, in holding this a lottery, took occasion to fully review the law upon the subject, and, among other things, held that the cases of Kohn v. Koehler, 96 N. Y. 362, and Ex parte Shobert, 70 Cal. 632, 11 Pac. 786, referred to by defendant's counsel, cannot be followed. This decision this court must follow, and under it, as well as by numerous others, it seems indisputable that the publication set out in the first count is such as cannot be transmitted through the mails.

It is not seriously disputed that the publication referred to in the second count is of the same class, but defendant contends that the word "prizes" is so written in such count that it may be read "purses," thus rendering the count uncertain; but such suggestion cannot be conceded. It is most probable that the public generally, including the proprietors of newspapers, have supposed that such publications—which have been common—may be lawful, and their transmission through the mails not prohibited; yet, after a careful

examination of the law and the decisions thereunder, the conclusion seems imperative that the demurrer must be overruled, and it is so ordered.