MEYER v. THE STATE.

A merchant who gives to a designated class of customers an opportunity to secure by lot or chance any article of value additional to that for which such customers have paid violates the provisions of section 407 of the Penal Code, which declares that no person "shall keep, maintain, employ, or carry on any lottery in this State, or other scheme or device for the hazarding of any money or valuable thing."

Argued October 15, — Decided October 27, 1900.

Accusation of misdemeanor. Before Judge Eve. City court of Richmond county. July 6, 1900.

*J. S. & W. T. Davidson* and *H. C. Roney,* for plaintiff in error.
*C. Henry Cohen, solicitor,* contra.

COBB, J. Meyer was arraigned on an accusation under the Penal Code, §407, which declares that "No person, by himself, or another, shall keep, maintain, employ, or carry on any lottery in this State, or other scheme or device for the hazarding of any money or valuable thing." The accused was tried by the judge of the city court of Richmond county, presiding without a jury, upon an agreed statement of facts; and was convicted. That portion of the agreed statement of facts upon which the judgment of conviction was based was, in substance, as follows: The accused was a wholesale and retail dealer in cigars and chewing-gum. On the day alleged in the accusation he was operating a "nickel slot trade machine."

The manner of the operation of this machine is as follows:  A nickel is placed in the slot, a handle is pulled down, a wheel within the machine revolves, and when it comes to a stop the number of cards constituting a "hand" in a game of poker are exhibited.   The person depositing the nickel is entitled to a cigar or package of chewing-gum, each valued at five cents, and in addition thereto to a prize according to the hand displayed; the highest prize being ·one hundred cigars or packages of chewing-gum for a "royal flush," and the lowest two of either commodity for two jacks or a better pair.   Many customers purchase the same cigar and the same chewing-gum over the counter and pay a nickel therefor, while others purchase through the operation of the machine and take the chance of getting more than the value of their money.   A portion of the agreed statement of facts the judge refused to consider.   These facts are, substantially, as follows:   There is no element of chance in the operation of the machine, except that of getting more than a nickel's worth.   The use of the machine is entirely voluntary to the customer, and the same is operated as an inducement to trade, the result being that for every cigar sold through the machine the ·accused gets about four cents instead of five cents, and about the same price for chewing-gum, but on account of the operation of the machine the amount of business done is largely increased.   This is a case made for the purpose of testing the question as to whether one who uses such a machine in his business violates the law.

The accused made a motion for a new trial, which was over-ruled, and he excepted.

We do not think the judge erred in refusing to consider that portion of the statement of facts above detailed.   The judgment was right on the facts passed upon by him; and even if the facts which he refused to consider had been treated as properly before him, the judgment should have been the same.   A lottery is de-fined to be: "A scheme for the distribution of prizes by lot or ·chance."   Web. Int. Dict.   "A hazard in which sums are ventured for the chance of obtaining a greater value."   Worcester's Dict.   For ·other definitions, see Anderson's and Bouvier's Law Dictionaries. If, then, the scheme or device for the hazarding of money which is prohibited by the Penal Code must be of the same nature as a lottery, before any one could be held to have violated the law who had not actually run a lottery, it must be shown that he engaged

in a scheme of similar nature, that is, a scheme or device for the distribution of prizes by lot or chance. We will not undertake to demonstrate that the scheme or device resorted to by the accused was a lottery, though this position, as will appear from the citations below, could be abundantly supported by authority. But we will consider the question as to whether he engaged in a scheme having for its purpose the distribution of prizes by lot or chance. Any scheme or device operated by a person, by which one participating therein might either lose the money invested or get more than his money's worth, the operator retaining the money so lost, is a scheme or device for the hazarding of money, within the meaning of the section of the Penal Code above quoted. *Wilson* v. *State,* 67 *Ga.* 658. So, it was held in *Kolshorn* v. *State,* 97 *Ga.* 343, that where the accused kept and maintained a machine so contrived that if one dropped a nickel in the slot therein he would either lose the nickel or win fifteen cents, he was guilty of a violation of the law contained in the section above quoted. In the case of Prendergast *v.* State (Tex.), 57 S. W. 850, a scheme very similar to the one referred to in *Kolshorn's* case was held to be a lottery. In Christopher *v.* State (Tex.), 53 S. W. 852, it was held that a slot machine similar in its method of operation to those described in the two cases last referred to was a gaming device within the meaning of the statutes of Texas on the subject of gaming. In Reeves *v.* State (Ala.), 17 So. 104, it appeared that the accused owned and operated a device consisting of a circular board, in the center of which was an arrow turning on a pivot, pointing to numbers around the edge of the board. Opposite to each number was placed an article of jewelry ranging in value from five cents to one dollar. Upon paying ten cents, one was allowed the privilege of whirling the arrow, and was entitled to receive the article of jewelry opposite the number on which the arrow stopped, or its equivalent in value. The scheme was held to be a lottery. In Chavannah *v.* State, 49 Ala. 396, a circular device revolving on a pivot, and which had a fixed index pointing to numbers or figures which corresponded with certain numbers or figures on cards sold to players, who sometimes won but more often lost, was held to be "a device of like kind" with a lottery.

But it is said that none of the cases above referred to are controlling in the present case, for the reason that in all of them there

was a mutuality of risk; and that the scheme operated by the accused was not within the meaning of our statute, because it imposed no risk whatever upon the customer, the whole risk being assumed by the accused.    In Quarles v. State, 5 Humph. 561, the Supreme Court of Tennessee held that a sale of goods above their market value, to be paid for when a particular candidate is elected at an election then pending, is betting on an election, but that the testimony must show that the goods were sold at a price above their value.    This decision rested upon the idea that there was no mutuality of risk in the wager, unless the purchaser agreed to pay more than the goods were worth.    In Shumate's case, 15 Grattan, 653, the Court of Appeals of Virginia, on a state of facts identical with those in the case just referred to, reached exactly the opposite conclusion.    In reply to the suggestion that there was no mutuality of risk, Robertson, J., in the opinion, says:  "It is true that a bet does imply risk, but it does not necessarily imply risk in both parties.    There must be between them a chance of gain and a chance of loss; but it does not follow that each of the parties to the bet must have both these chances.    If, from the terms of the engagement, one of the parties may gain but can not lose, and the other may lose but can not gain, and there must be either a gain by the one or a loss by the other, according to the happening of the contingency, it is as much a bet or wager as if the parties had shared equally the chances of gain and of loss."    In Bell v. State, 5 Sneed, 507, it was held that the fashionable sporting artifice, commonly called "a gift enterprise," by which a merchant or tradesman sells his wares for their market value, but, by way of inducement, gives to each purchaser a ticket, which entitles him to a chance to win certain prizes, to be determined after the manner of a lottery, is common gaming.    Caruthers, J., in referring to the scheme described in the evidence, says:  "Is it not that species of gaming called a lottery?    A small sum is ventured for the chance of a greater, one dollar or five dollars perhaps, for a book, and the chance of a watch, valued at forty, or a set of instruments at two dollars, or a box of wafers worth ten cents.    If the book is certain, without hazard, the watch is not; that depends upon chance.    So all pay their money, at least in part, for the chance of winning a prize of greater or less value.    According to every correct idea of legal definition, this must be gaming, and all concerned are guilty of that

offense. All these artifices to evade and cheat the law, and entrap the unwary, are but aggravations of the offense." In Hudelson v. State, 94 Ind. 426, the indictment alleged that the defendants published an advertisement that they would, on a day named, give to the person buying goods at their store to the amount of fifty cents, and guessing nearest the number of beans in a glass globe in their window, a gold watch. This was held to be a good indictment under a statute making it penal to advertise a lottery. In Davenport v. Ottawa (Kan.), 39 Pac. 708, it appeared that a firm placed in its window a locked box containing $25, and advertised that all persons buying goods in their store to the amount of fifty cents or more would receive a key, and only one key would be given out which would unlock the box; and that the person receiving the key which would unlock the box would be given the $25. The accused sold goods to various persons at the usual and ordinary prices without extra charge on account of the key, and gave to each of these persons a key to which was attached a card stating the above offer. It was held that these transactions were in effect sales of merchandise and lottery tickets for an aggregate price, and that the conviction of a member of the firm was proper under an ordinance prohibiting the sale and offering for sale of lottery tickets. In State v. Mumford, 73 Mo. 647, it appeared that the proprietors of a newspaper offered to each person who would subscribe, at the usual subscription price for the paper during a given year, a ticket which entitled the holder to participate in a distribution of prizes. The distribution was made by lot. It was held, "That the scheme was a lottery within the purview of the criminal laws; and it made no difference that the tickets were not sold, but were given to subscribers and to no one else." It was said in the opinion, "The fact that the subscription price of the Times was not increased does not alter the character of the scheme, inasmuch as the price paid entitled the subscriber to a ticket in the lottery as well as to a copy of the paper." In United States v. Wallis, 58 Fed. 942, the accused was indicted for sending through the mails a newspaper containing an advertisement of a lottery. It appeared that the scheme advertised was very similar to the one described in the case last above referred to. A demurrer to the indictment was overruled, the court resting its decision upon the case of Horner v. United States, 147 U. S. 449. In that case the Supreme Court held that a scheme of

the Austrian government to facilitate the sale of its bonds, which were sold at their face value, by which prizes of different value were awarded to different purchasers by drawings by chance, was a lottery. The Supreme Court of New Jersey held that a public exhibition where prizes of different values were distributed by chance to the holders of tickets to the performance was a lottery. State v. Shorts, 3 Vroom, 398, s. c. 90 Am. D. 668. From the authorities above cited, it is clear that the accused in the present case, if not guilty of operating a lottery, was undoubtedly guilty of maintaining a scheme or device of a similar nature thereto.

*Judgment affirmed. All the Justices concurring.*