THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
LUIS SANTANA, Defendant and Appellant.

No.. 5720.   Argued May 23, 1935.—Decided July 5, 1935.

*Juan Valldejuli* for appellant.   *R. A. Gómez, Prosecuting Attorney,*
and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the
court.

This prosecution was commenced by complaint filed in
the Municipal Court of Toa Alta by the insular policeman
Blas Sánchez, charging Luis Santana with a violation of
section 3 of Act No. 11 of 1933 (Session Laws (2), p. 70),
consisting in his possessing, using, and causing to operate,
unlawfully, wilfully, and maliciously for gambling purposes
a machine "known as 'Bingo' (Slot Machine or Marble Jax),
being operated by five balls and a list of numbers, which
balls, upon a one-cent piece being deposited therein and a
lever pulled, mark numbers, the winner being the person who
gets the highest number during the period of a week, such
prize being paid with the one-cent pieces deposited by the
machine in a receptacle marked with the number one."

After the case had been decided by the municipal court, an
appeal was taken to the District Court of Bayamón.  There
it was set for trial *de novo* on November 2, 1934, and defend-
ant admitted the truth of the facts set forth in the complaint,

but contended that his machine was not one of those prohibited by law, and could not be considered as a substitute for those so prohibited.

The machine in question was seized and presented in court. The district judge describes it as follows:

"The apparatus . . . is an automatic service machine, of the Marble Jax type. It is provided with a slot in which a one-cent coin is introduced, which causes it to operate. Using then a lever, the player has at his disposal and uses five balls, which upon being released one by one, run across a board. This board has in the upper part a horseshoe, in the center of which is a little hole or hollow in which, if the ball stops there, one thousand points is marked in favor of the player. If the ball does not stop there, it falls out and continues to roll down the board, which is divided by pins into different zones. In these zones there are other holes or hollows, marked with different numbers, in which, if the ball stops, the player is credited with the number of po'nts with which the hole is marked. If the ball runs down the whole board without stopping in any of the holes, it falls at the end of its journey in a slot, and the player may not then take credit for any score whatsoever.

"On the front of the machine there are two receptacles. In one the money used by the players is deposited. It does not appear from the evidence in this case what use is made of the other."

In view of this description and the use given to the machine by defendant, according to his own admissions, the court found that the machine was within the prohibition of section 3 of Act No. 11 of 1933, and held defendant guilty of the offense charged, sentencing him to 30 days in jail.

Defendant then presented a motion to set aside the judgment, which was denied by the court.

Defendant appealed from the judgment and the order, and in his brief he assigned two errors, to wit: (1) in having included the "Bingo" machine among those prohibited by the act, and (2) in having rendered judgment upon a complaint which does not charge a public offense.

Appellant maintains "that the title of the act speaks solely and exclusively of selling machines, placing

emphasis, however, on selling machines known as 'slot machines,' but in no way includes in the title the aforesaid machines known as 'bingo.' "

The title of Act No. 11 of 1933, which was approved by the First Special Session of the Thirteenth Legislature of Puerto Rico (Laws, First Special Session of 1933, p. 70), in its pertinent part reads as follows: "Act . . . to prohibit the introduction, manufacture, possession, use or operation of selling machines or of machines which may be used for gambling or lottery purposes and of the kind known as slot machines *(tragamíqueles);* to impose penalties, and for other purposes."

The title could not be broader, particularly the English, which expressly refers not only to selling machines but to machines in general which may be used for gambling.

Section 3 of the act reads thus:

"From and after the date on which this Act takes effect, the introduction, manufacture, possession, use or operation of selling machines which may be used for gambling or lottery purposes and machines of the kind known as slot machines *(tragamíqueles),* and of any other kind that may be used for gambling or lottery purposes, in whatever manner they may be manipulated, or any substitute therefor, or parts and accessories, shall be considered illegal, and their introduction, manufacture, use, possession or operation is prohibited."

In comparing this section with the title, particularly with the English title, we do not find that it violates section 34, paragraph 8, of the Organic Act, which provides:

"No bill except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Not only from the complaint but also from the machine itself as described by the trial judge does it appear that what is involved is a selling machine, a slot machine in general (which is, according to The Winston Universal Reference

Library, 1931 ed., p. 933, a "mechanism which is made to operate by inserting a coin, as for the sale of candy," slot meaning a small opening, a little, narrow aperture, generally made to receive something, particularly the opening by which money is introduced into a slot machine), or any machine acquired and used for the operation of a game of chance.

The fact that the machine is designated in the complaint with the particular name "Bingo" when such name is not expressly mentioned in the act, does not imply that the machine is not prohibited if it be used for the purposes therein specified.

█ Appellant insists that the "Bingo" does not fall within the scope of the act, for the reason that, since the outcome of the game played depends upon the skill of the player, it is not properly classified as a game of chance which is the one prohibited.

The efforts made along this line in the brief which we are considering, and which were made in oral argument by counsel for defendant, do not convince us that this is so. Furthermore, defendant himself admitted before the trial court that he had in his possession and was causing the machine in question to operate unlawfully, wilfully, maliciously for gambling purposes.

Lastly, it is unnecessary in order for a game to be classed as a game of chance, that the element of the skill of the player be entirely excluded.

It was so held in the case of *Sparks* v. *State,* 173 S.E. 216, 218, which was decided by the Court of Appeals of Georgia on February 12, 1934, and in which that court said:

"The defendant's contention that the game, for the operation of which he was indicted, was one of skill and not one of chance, and therefore not a violation of the law, is untenable under his own statement. His defense brings to mind what was said by the Supreme Court in *Equitable Loan & Sec. Co.* v. *Waring,* 117 Ga. 599, 44 S. E. 320, 327, 62 L.R.A. 93, 97 Am. St. Rep. 177, in discussing lotteries, etc.: 'As fast as statutes are passed or decisions made, some skillful

change is devised in the plan of operations, in the hope of getting just beyond the statutory prohibition; but, so long as the inherent evil remains, it matters not how the special facts may be shifted, the scheme is still unlawful.' The indictment in the present case was drawn under section 398 of the Penal Code, which is as follows: 'No person, by himself or another, shall keep, maintain, employ, or carry on any lottery in this State, or other scheme or device for the hazarding of any money or valuable thing.' Was the machine in the case at bar a scheme or device for the hazarding of money? As was decided in *Equitable Loan & Sec. Co.* v. *Waring, supra,* the word 'hazarding' and the construction of the several statutes relating to gaming of this character make chance a necessary element of the offense. Under the defendant's own statement there was a consideration paid for shooting the machine, and, if a player should obtain a score of 4,800 or better, he would receive a 15-cent package of cigarettes for his nickel, whereas, if he did not shoot that score, he received nothing for his money. The evidence shows, without dispute, that even the most efficient could not obtain that score every time, although some, from practice, would obtain it more frequently than others. The very fact that one might come in and make that score and receive 15 cents worth of merchandise for his nickel, and that the same person or some other person might shoot it and not receive anything, but would lose his nickel, certainly makes it a game of chance. The defendant's own statement shows that the tables in question were 'set on the basis of giving away approximately one half of the money the table takes in, in the form of merchandise.' How then can it be contended that it is not a game of chance, when it is admitted that the tables are 'set' to give away half of what they take in. The inherent evil at which this law is aimed is gambling. The fact that one might lose 5 cents or he might for that 5 cents receive 15 cents in merchandise, makes the table a scheme or device for the purpose of hazarding money within this statute. The defendant says, 'Undoubtedly, the table has more skill than chance.' The fact that skill or proficiency might enter into the operation of the machine makes no difference. 'Any scheme or device operated by a person by which one participating therein might either lose the money invested or get more than his money's worth, the operator retaining the money so lost, is a scheme or device for the hazarding of money, within the meaning of the section of the Penal Code above quoted.' *Meyer* v. *State,* 112 Ga. 20, 37 S. E. 96, 51 L.R.A. 496, 81 Am. St. Rep. 17.

This quotation seems to settle the law unfavorably to the defendant's contention. The evidence amply supports the verdict of guilty even under the defendant's own statement, and the court did not err in overruling the general grounds of the motion for a new trial.''

The judgment and order appealed from must be affirmed.