El Pueblo de Puerto Rico, demandante y apelado, *v.* Luis Santana, acusado y apelante.

No. 5720.—*Sometido:* Mayo 23, 1935. *Resuelto:* Julio 5, 1935.

*Juan Valldejuli,* abogado del apelante; *R. A. Gómez, Fiscal,* y *Luis Janer, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este proceso comenzó por denuncia presentada en la Corte Municipal de Toa Alta por el policía insular Blas Sánchez imputando a Luis Santana una infracción a la sección 3 de la Ley No. 11 de 1933 ((2) pág. 71) consistente en tener en su posesión, usar y hacer funcionar ilegal, voluntaria y maliciosamente, para fines de juego de azar una máquina "conocida con el nombre de 'Bingo' (*Slot Machine* o *Marble Jax*) siendo manipulada por cinco bolas y un cuadro de números, depositando una moneda de un centavo en ella y halando una palanca marcan dichas bolas números, ganando en el período de una semana, la persona que haga el mayor número, pagándose dicho premio con las monedas de un centavo que tiene la máquina depositadas en un recipiente marcado con el número uno."

Resuelto el caso por la corte municipal, pasó en apelación a la del distrito, Bayamón. Señalado el 2 de noviembre, 1934, para el nuevo juicio, el acusado admitió la certeza de los hechos relatados en la denuncia, pero alegó que la máquina que usaba no era una de las prohibidas por la ley, ni podía considerarse como un sustituto de las prohibidas.

La máquina en cuestión se ocupó y se presentó a la corte. El juez de distrito la describe como sigue:

"El artefacto . . . es una máquina de servicio automático, estilo *Marble Jax.* Está provista de una ranura por la cual se introduce una moneda de un centavo que la hace funcionar. Usando entonces de una palanqueta, se dispone y usa de cinco bolas que lanzadas una a una recorren un tablero. Este tablero tiene en su parte superior una herradura en cuyo centro existe un hoyuelo o hueco en que si la bola se detiene marca mil puntos a favor del jugador y si no se detiene o cae continúa recorriendo el tablero que está dividido por

medio de alfileres en distintas zonas y en estas zonas existen sendos hoyuelos o huecos, con distintas numeraciones, en los que si la bola se detiene el jugador se apunta a su favor el número de tantos que marca el hoyuelo. Si la bola recorre todo el tablero sin detenerse en ninguno de los hoyuelos finaliza su recorrido en una ranura sin que el jugador pueda entonces anotarse tanto alguno a su favor.

''La máquina tiene en su parte frontal dos recipientes: en uno de ellos quedan depositadas las monedas usadas por los jugadores; en el otro no consta de la prueba en este caso qué uso se ha dado al mismo.''

Atendida esa descripción y el uso dado a la máquina por el acusado, según su propia admisión, la corte consideró el hecho comprendido en la sección 3 de la Ley No. 11 de 1933, y declaró al acusado culpable del delito que su infracción constituye, imponiéndole treinta días de cárcel.

Se presentó entonces una moción pidiendo que la sentencia se dejara sin efecto, que fué declarada por la corte sin lugar.

El acusado apeló de la sentencia y de la resolución, señalando en su alegato la comisión de dos errores, a saber: 1, haber incluído la máquina ''Bingo'' entre las prohibidas por la ley, y 2, haber dictado sentencia basándose en una denuncia que no imputa un delito público.

▆▆▆▆ Sostiene el apelante ''que el título de la ley habla única y exclusivamente de máquinas vendedoras, haciendo sin embargo énfasis en las máquinas vendedoras denominadas 'slot machines', pero en forma alguna incluye en su título las mencionadas máquinas denominadas 'bingo.' ''

El título de la Ley No. 11 de 1933 que fué aprobada por la Primera Legislatura Extraordinaria de la Décimotercera Asamblea Legislativa de Puerto Rico, Leyes de esa sesión, pág. 71, dice, en lo pertinente, lo que sigue: ''Ley . . . para prohibir la introducción, manufactura, posesión, uso o funcionamiento de máquinas vendedoras que pudieren usarse para fines o de juego de azar o lotería y de las conocidas con el nombre de traganíqueles (slot machines); para imponer penalidades, y para otros fines.''

El texto inglés expresa *"to prohibit the . . . of selling machines or of machines which may be used for gambling. . ."*

No puede ser más amplio, especialmente el inglés que de modo expreso se refiere no sólo a máquinas vendedoras si que a máquinas en general que puedan usarse para fines de juego.

La sección tercera de la ley, es así:

"A partir de la fecha en que esta Ley empiece a regir, la introducción, manufactura, posesión, uso o funcionamiento de máquinas vendedoras que pudieren usarse para fines de juego de azar o lotería y de las conocidas con el nombre de traganíqueles (*slot machines*), y de cualquier otra clase, que pudiera usarse con fines de juego de azar o lotería, en cualquier forma en que fueren manipuladas, o cualquier sustituto de las mismas, o partes y accesorios, será considerado ilegal y su introducción, manufactura, uso, posesión o funcionamiento queda prohibido."

Comparada la sección con el título, sobre todo con el título en inglés, no encontramos que viole el artículo 34, párrafo 8, de la Ley Orgánica que prescribe:

"No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado en su título; pero si algún asunto que no esté expresado en el título fuere incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título."

Tanto de la denuncia como de la máquina misma descrita por el juez sentenciador, se desprende que se trata de un aparato vendedor, de una *"slot machine"* en general (que es, según The Winston Universal Reference Library, ed. 1931, pág. 933, un "mecanismo que se pone a funcionar insertándole una moneda, como para la venta de dulces", significando *"slot"* ranura o hendidura estrecha, abertura pequeña y angosta hecha generalmente para recibir, especialmente la abertura por la que se introduce la moneda en una *"slot machine"*), o de una máquina cualquiera adquirida y usada para la explotación del juego de azar.

El hecho de que en la denuncia se designe la máquina con el nombre particular de "Bingo" cuando dicho nombre no se menciona expresamente en la ley, no implica que la máquina no sea prohibida si se usa para el fin en la misma especificado.

Se insiste en que el "Bingo" no cae dentro del significado de la ley porque dependiendo el éxito del juego que con él se realiza de la habilidad del jugador, no cabe calificarlo de azar que es el prohibido.

Los esfuerzos que se hacen en esa dirección en el alegato que estamos considerando y que se hicieron por el abogado del acusado en su informe oral, no nos convencen de que sea así. Además, ante la corte sentenciadora el propio acusado admitió que tenía en su posesión y hacía funcionar la máquina en cuestión ilegal, voluntaria y maliciosamente para fines de juego de azar.

Por último no es necesario para que pueda calificarse un juego como de azar que excluya por completo el elemento habilidad del jugador.

Así en el caso de *Sparks* v. *State,* de la Corte de Apelaciones de Georgia, decidido en febrero 12, 1934, y reportado en 173 S. E. 216, 218, se dice:

"La contención del acusado de que el juego por que se le procesó es uno de destreza y no uno de azar, y que por ende no constituye una infracción de la ley, es insostenible bajo sus propias alegaciones. Su defensa nos hace recordar lo que la Corte Suprema dijo en el caso de Equitable Loan & Sec. Co. v. Waring, 117 Ga. 599, 44 S. E. 320, 327, 62 L.R.A. 93, 97 Am. St. Rep. 177, al discutir la cuestión de loterías, etc.: 'Inmediatamente que se aprueban los estatutos o se emiten decisiones, se inventa algún cambio ingenioso en la forma de explotar el juego en la esperanza de eludir la prohibición estatutaria; pero mientras el mal inherente subsista, no importa la forma en que se varíen los hechos especiales, el plan continúa siendo ilegal.' La acusación en el presente caso fué redactada de conformidad con el artículo 398 del Código Penal, que lee como sigue: 'Ninguna persona, por sí o por mediación de otra, explotará, sostendrá, sorteará o jugará una lotería en este estado, ni ningún otro plan u organización para la distribución de dinero o cosas de valor.'

¿Equivalía la máquina utilizada en el presente caso a un plan u organización para la distribución de dinero? Conforme se resolvió en el caso de Equitable Loan & Sec. Co. v. Waring, supra, la palabra 'distribución' y la interpretación de los distintos estatutos relativos a juegos de esta índole hacen que el azar sea un elemento necesario del delito. Según las propias manifestaciones del acusado se pagaba determinado precio por manipular la máquina, y si un jugador lograba apuntarse 4,800 puntos o más, recibía por su 'nickel' una cajetilla de cigarrillos de 15 centavos, mientras que si no alcanzaba una puntuación tan alta, nada recibía en cambio de su dinero. La prueba demuestra de manera indubitada que aun la persona más hábil no podía obtener ese número de puntos todas las veces, aun cuando algunos, dada su larga práctica, lograban apuntárselos más frecuentemente que otros. El hecho en sí de que viniera una persona y alcanzara esa puntuación y recibiera por su 'nickel' mercancías por valor de 15 centavos, y de que esa misma persona o alguna otra manipulara la máquina y no recibiera nada y en cambio perdiera su 'nickel', ciertamente lo convierte en un juego de azar. Las propias aseveraciones del acusado demuestran que la mesa en cuestión estaba preparada 'para dar al público en mercancía aproximadamente la mitad del dinero que se recibía.' ¿Cómo podría entonces sostenerse que no es un juego de azar, cuando se admite que la mesa está 'preparada' para dar la mitad de lo que recibe? El mal inherente a que se dirige esta ley es el juego de azar. El hecho de que una persona pueda perder 5 centavos o de que por esos 5 centavos reciba 15 en mercancías, hace que la mesa sea un plan u organización para la distribución de dinero dentro de este estatuto. El acusado dice: 'Indudablemente hay que tener más habilidad que suerte.' El hecho de que la habilidad o la eficiencia de la persona surta algún efecto en la manipulación del artefacto no tiene importancia alguna. 'Cualquier plan u organización explotado por una persona según el cual los que participan en el mismo pierden el dinero invertido o reciben más del valor del mismo, reteniendo aquél que lo administra el dinero así perdido, es un plan u organización para la distribución de dinero, dentro del significado del artículo del Código Penal arriba copiado.' Meyer v. State, 112 Ga. 20, 37 S. E. 96, 51 L.R.A. 496, 81 Am. St. Rep. 17. Esta cita parece resolver la cuestión desfavorablemente a la contención del acusado. La prueba sostiene ampliamente el veredicto de culpabilidad aun bajo las propias alegaciones del acusado, y la corte no cometió error al declarar sin lugar la moción de nuevo juicio.''

*Deben confirmarse la sentencia y la resolución recurridas.*