## Charles M. Dunn
### v.
## The People of the State of Illinois.

40  465
70a 293
40  465
176 150
40  465
e89a 4284

1. Lottery — *what constitutes, within the meaning of the Criminal Code.* A lottery is a scheme for the distribution of prizes by chance.

2. In this case, a party was indicted under the act of 1847, making the vending of lottery tickets a penal offense. It appeared the defendant was conducting what he termed a "gift sale" establishment. He kept upon his desk, at his place of business, a box filled with envelopes, purporting to contain some valuable recipes and popular songs, and also a card descriptive of some one of an immense stock of various articles of different values, worth one million five

30—40th Ill.

hundred thousand dollars, all to be sold for one dollar each, without regard to value, and not to be paid for until the purchaser of the envelope knew what he was to receive. The price of an envelope was twenty-five cents. The sale of one of these envelopes was held to be the sale of a lottery ticket. It was "a scheme for the distribution of prizes by chance." The element of chance did not lie in what the holder of the envelope might knowingly do with his card and dollar after he had purchased his envelope, but in the purchase of the envelope itself, which, as was represented by the seller, might contain a card or ticket that would give him the right to buy for one dollar an article worth hundreds of dollars, or one of little or no value.

3. Nor would the character of the transaction be changed by assuming that the ticket in every envelope really represents some article of merchandise intrinsically worth the dollar which the holder will be obliged to pay. If every ticket in an ordinary lottery represented a prize of some value, yet, if these prizes were of unequal values, the scheme of distribution would still remain a lottery.

4. INDICTMENT *in such case — its requisites.* It is not necessary, in such a case, that the indictment should particularly describe the card or ticket contained in the envelope. It is sufficient to describe it in the language of the act as a lottery ticket.

5. EVIDENCE —*what is admissible under such an indictment.* It is not improper, on such a trial, to allow the prosecution to read to the jury the contents of other envelopes found among those from which the defendant sold, beside the one shown to have been sold in this case. Those envelopes, with the hand-bill advertisements found at the defendant's place of business, and bearing his name, are admissible for the purpose of showing the true character of the transaction.

WRIT OF ERROR to the Recorder's Court of the city of Chicago; the Hon. EVERT VAN BUREN, Judge, presiding.

The opinion of the court contains a sufficient statement of the case.

Messrs. SCATES, BATES & TOWSLEE and Mr. W. K. McALLISTER, for the plaintiff in error.

Mr. CHARLES H. REED, State's Attorney, for the people.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

In 1847, the legislature passed a law, making the vending of lottery tickets a penal offense, and punishing it with a fine of

not less than $100 nor more than $500. Under this law the plaintiff in error was indicted in the Recorder's Court of Chicago, tried and found guilty. From the judgment rendered on that verdict he has prosecuted a writ of error.

The evidence shows that the defendant below was conducting what he termed, in his advertisements, a "gift sale" establishment. He kept upon his desk, at his place of business, a box, two and a half feet long, filled with envelopes standing edgewise. Each of these envelopes had printed upon its back an advertisement, purporting that the envelope contained some valuable recipes and popular songs, and also a card, descriptive of some article in an "immense stock of over 250,000 pianos, watches, sewing machines, engravings, sets of jewelry, books, etc., worth $1,500,000, all to be sold for one dollar each, without regard to value, and not to be paid for until you know what you are to receive." A hand-bill advertisement, of which large numbers were found at the store, upon the counter and at the door, was put in evidence, and this gave a list of a great variety of articles, and professed that some of these articles was represented by the card in the envelope. A card might represent a grand piano or a finger-ring, but whatever article the purchaser might find specified upon the card contained in the envelope bought by him, that article he would be entitled to purchase for one dollar. The price of an envelope was twenty-five cents. The prosecution proved the sale by the plaintiff in error of one of the envelopes with a card and some printed songs and recipes inclosed.

It is urged very strenuously by the counsel for the plaintiff in error, that the sale of one of these envelopes, with the recipes, the songs, and the card, was not the sale of a lottery ticket. The term "lottery" has no technical meaning in the law distinct from its popular signification, and we accept the definition quoted by counsel from one of the lexicographers. A lottery is "a scheme for the distribution of prizes by chance." It is insisted by counsel that there is, in the case before us, no element of chance, and that, therefore, the radical idea of a lottery is wanting. The court is of a different opinion. It is true, as

urged by counsel, that each envelope contained, besides the card, a number of songs and recipes, and that the card or ticket, representing an article of merchandise to be bought for one dollar, confers simply a right to buy which the holder can exercise or not at his option, and, if he buys, he does so with his eyes open, and with the opportunity of knowing the value of what he purchases. This is true, but the element of chance lies, not in what the holder of the envelope may knowingly do with his card and dollar after he has purchased his envelope, but in the purchase of the envelope itself, which, it is represented to him by the advertisements, may contain a card or ticket that will give him the right to buy for one dollar an article worth hundreds of dollars, or may contain a card that will only give him the right to buy something so valueless as not to be worth buying at any price. So far as men who manage schemes of this character can be supposed to give the credulous persons who deal with them any "chance" whatever of a return in value of their investment, the chance lies in the sale of the envelope. This, at least, is the chance offered. The plaintiff in error professes to the public, as an inducement to purchase his envelopes, that twenty-five cents will buy one whose contents may represent a cheap trinket, or a grand piano, according to the fortune of the purchaser, in buying, and certainly the fact that a dollar is to be paid in order to secure the further fruits of the transaction, and that it may be consummated or not at the option of the purchaser, does not make the transaction any less a lottery than if the dollar were not to be paid at all. It would hardly be contended that an ordinary lottery scheme would change its character by requiring that the holder of a ticket should pay an additional sum of ten dollars before receiving whatever prize his ticket might draw, and leaving it to his option whether to receive the prize on such terms or not.

Neither would the character of the transaction be changed by assuming that the ticket in every envelope really represents some article of merchandise intrinsically worth the dollar which the holder will be obliged to pay. If every ticket in an ordinary lottery represented a prize of some value, yet, if these

prizes were of unequal values, the scheme of distribution would still remain a lottery.

We are reminded by the counsel for the plaintiff in error that courts should not extend penal enactments by construction. We acknowledge the obligation of the maxim, but we hold that the transaction proven against the plaintiff in error is within both the spirit and the letter of the law. He may choose to call his business a " gift sale," but it is none the less a lottery, and we cannot permit him to evade the penalties of the law by so transparent a device as a mere change of name. If it differs from ordinary lotteries, the difference lies chiefly in the fact that it is more artfully contrived to impose upon the ignorant and credulous, and is, therefore, more thoroughly dishonest and injurious to society.

It is objected to the indictment that it did not particularly describe the card or ticket contained in the envelope. This was unnecessary. It was sufficient to describe it in the language of the act as a lottery ticket.

It is also objected that the people's attorney was allowed, on the trial, to open other envelopes besides the one sold, and read their contents to the jury. The objection is not well taken. The envelopes offered in evidence were among those found in the box at the defendant's store from which he sold, and, with the hand-bill advertisements found upon his counter, and bearing his name, were admissible for the purpose of showing the true character of the transaction which the jury were investigating.

We repeat that this case presents an exceedingly clear infraction of the law, and the prosecuting attorney is deserving of commendation for bringing this dishonest species of business, whose flaunting advertisements crowd the columns of the newspapers, to the bar of the courts and under the penalties of the law.

*Judgment affirmed.*