# GEORGE W. THOMAS

## ·*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. LOTTERY—*what constitutes.* In a prosecution for the alleged sale of a lottery ticket, it appeared the ticket was as follows:

"CHICAGO INDUSTRIAL COLLEGE AND HOME FESTIVAL.

"This ticket is a receipt for $5, in payment for and delivery of a copy of a steel plate engraving, and admission to our concerts and lectures, for which it is sold.

"By order of the officers,

THOMAS & CO., General Agents."

Besides the ticket, a steel plate engraving was delivered to the purchaser, and also a bill, entitled, "Grand National Festival, to erect in the city of Chicago an Industrial College and Home for Unfortunate Females," and it was proposed in the bill to give a series of musical receptions, and a course of lectures, in Chicago, at the close of which, and after the sale of 200,000 copies of steel plate engravings, to distribute to the purchasers of engravings, "in a just and legal manner," $200,000, in presents, amounting in number to 3012. Twenty-eight hundred of this number were to be the newspapers of Chicago, at a price from $2 to $12 each. The remaining 212 were estimated at $35,000 to $50,000. It was *held*, this was "a scheme for the distribution of prizes by chance," and constituted a lottery, within the meaning of the statute.

2. The fact that no plan of distribution had been determined upon at the time of the sale of the ticket, would not relieve the scheme of its character as a lottery, when it was apparent that some of the purchasers of tickets would fail to receive a prize. The promise that the distribution should be in "a just and legal manner," was evasive.

3. And even if the ticket to the concerts and lectures, and an engraving, were intrinsically worth the price paid for the ticket, the scheme would still be a lottery.

4. EVIDENCE *in such case—to prove the intent.* It was proper, in such case, to admit in evidence, on behalf of the prosecution, not only the ticket sold, but the bill or advertisement delivered to the purchaser, which explained the purposes and character of the scheme, and also other tickets and bills or advertisements of similar kind, sold and delivered by the accused to other parties, as tending to prove the intent with which the ticket was sold.

5. If the intent can not be implied from the facts and circumstances which, with the intent, constitute the crime, then other acts of the party, from which it can be implied, may be proved. Whatever will prove the intent, is admissible, either to show *scienter*, or guilty knowledge.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

George W. Thomas was indicted, in the court below, for selling a lottery ticket to John McAuley. A trial resulted in a finding of guilty, and the assessment of a fine of $100, and costs.

The defendant thereupon sued out this writ of error.

Messrs. E. & A. VAN BUREN, for the plaintiff in error.

Mr. CHARLES H. REED, State's attorney, for the people.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The charge against plaintiff in error is, the unlawful sale of a lottery ticket.

The statute creating the offense is as follows: "If any person shall vend, sell, or otherwise dispose of, any lottery ticket in this State, he, she, or they, shall be liable to indictment, and on conviction thereof, fined in a sum not less than $100 nor more than $500, and shall stand convicted until the fine and costs are paid."

The following is a copy of the ticket sold:

"CHICAGO INDUSTRIAL COLLEGE AND HOME FESTIVAL.

"This ticket is a receipt for Five Dollars, in payment for and delivery of a Copy of a Steel Plate Engraving, and admission to our Concerts and Lectures, for which it is sold.

"By order of the Officers,
　　　　　　　　　　"THOMAS & Co. General Agents."

Besides the ticket, a steel plate engraving was delivered.

At the time of the sale, a bill was given to the purchaser, entitled, "Grand National Festival, to erect in the city of Chicago

11—59TH ILL.

an Industrial College and Home for Unfortunate Females," and it was proposed to give a series of superb musical receptions, and a course of lectures, in Chicago, during the months of April, May, June and July, 1871, and at the close thereof, and after the sale of 200,000 copies of steel plate engravings, to distribute, as presents, to the purchasers of engravings, "in a just and legal manner," $200,000 in presents, amounting in number to 3012. Twenty-eight hundred of this number are the newspapers of Chicago, at a price from $2 to $12 each. The remaining 212 are estimated at $35,000 to $50,000.

The people also introduced, in evidence, other tickets and bills or advertisements of a similar kind, sold and delivered by plaintiff in error to other parties.

It is contended that the court erred in the admission of any of the papers, except the ticket sold to the party mentioned in the indictment.

Intent is the gist of an offense. If it can not be implied from the facts and circumstances which, with the intent, constitute the crime, then other acts of the party, from which it can be implied, may be proved. Whatever will prove the intent is admissible, either to show *scienter*, or guilty knowledge. It has repeatedly been held, that, in indictments for knowingly uttering a forged document, or counterfeit bank notes, proof of the possession, or the prior or subsequent utterance of other false documents or notes, though of a different description, should be admitted, to determine the question of intent. An independent offense is also receivable to show intent. Wharton Crim. Law, 292-301 ; 1 Greenlf. Ev. sec. 53.

This court held, in *Dunn* v. *The People*, 40 Ill. 465, that it was proper for the prosecution to read to the jury the contents of other envelopes, beside the one sold, for the purpose of showing the true character of the transaction.

The delivery of the bill, at the time the ticket was sold, together with its contents, tend to explain the object of the sale, and the manner in which the scheme was to be carried out.

These papers were admissible to show the true intent of the party charged.

The principal objection urged to the judgment is, that the ticket in question is not a lottery ticket ; that the sale was not within the purview of the statute, and that there is no chance in the scheme.

This court, in *Dunn* v. *The People, supra,* has accepted the definition of the lexicographers, that a lottery is "a scheme for the distribution of prizes by chance."

The ticket alone does not constitute a lottery, for we are not informed by it that there would be any distribution of prizes. When, however, we consider it in connection with the advertisement, we ascertain that there will be a distribution at the close of the concerts and after the sale of the engravings.

The advertisement contains this language : "There will be distributed, as presents, to the purchasers of engravings, in a just and legal manner, $200,000 in presents." The term, "present," though literally it means a gift, yet, in the relation, and in the sense in which it was used, evidently meant a prize. It was offered as the reward of contest, to the purchasers. It was something to be won. One ticket and engraving were sold for $5, 100 engravings and tickets for $425, and 1000 for $4250. Inducements were thus offered to struggle for the prizes.

Here, then, was a scheme for the distribution of prizes. Was the distribution certain and fixed, or was it to be by chance ?

It is urged, in defense of this scheme, that no plan of distribution had been determined upon ; that the purchasers were to receive certain articles in a just and legal manner, and that a plan might be devised, at the proper time, which would neither violate the law nor be in contravention of good morals.

The distribution was to be in a just and legal manner. It should, then, be in an honest, upright and equitable mode. There should be perfect fairness and equality. This plan

would be utterly violated, if any one of the numerous purchasers should fail to receive a prize. The distribution could not be in a "just and legal manner," unless the number of purchasers was the same as the number of prizes, and the prize received proportional, as nearly as possible, to the amount of money paid.

It is barely possible, but most improbable, that the purchasers would be the same in number as the presents. We could not indulge in so unreasonable a presumption, even in a criminal proceeding. In ordinary affairs, we must reason upon probabilities, deduce conclusions from facts, and not indulge in mere conjecture. We have no right to harbor wild imaginings, to change a reasonable and probable result.

From the facts developed, we assume that it is not only probable, beyond a reasonable doubt, but almost an absolute certainty, that some of the numerous purchasers would have received blanks. We think this was intended. Even if the ticket to the concerts and lectures, and an engraving, were intrinsically worth $5, the scheme would still be a lottery. The hand bill advertisement delivered with each ticket held out inducements to purchase. Each person who invested $5 became entitled to a chance for $50,000 in glittering gold, or $25,000 in greenbacks, or a splendid residence in Chicago, or in Brooklyn, N. Y. The purchasers were thus incited to rivalry. Gold, which, in the estimation of some, opens all the avenues of pleasure, was the lure to incite the credulous and unsuspecting into this scheme.

Had not this plan been watched by the vigilance of the law, can there be any doubt that numerous persons would have purchased tickets, prompted by the hope of gain? Are there not inseparably connected with it the same fascination and excitement and intense desire for gain, which gather around the gaming table?

Like any other species of gambling, lotteries have a pernicious influence upon the character of all engaged in them.

This influence may not be so direct, and the immediate consequences so disastrous, as in some kinds of gambling, which rouse the violent passions and stake the gambler's whole fortune upon the throw of a die. The temptations, however, are thrown in the way of a larger number, and a better class. The evil may spread more widely, and infect more deeply.

It is said that the plan was undetermined, and that the wisdom of the "advisory committee" would have devised one, just and equal. So chance is always undetermined. It neither forms nor designs. Intention is never attributed to it; its events are uncertain.

The promise of the hand bill, that the distribution shall be in a just and legal manner, is evasive. We are not bound to determine the intention from the language alone, but from all the facts, and the reasonable deductions from facts.

The scheme itself is deceptive. If the engravings are worth $1,000,000, and the presents $200,000, then $1,200,000, together with concerts and lectures, are given for $1,000,000. This benevolence is too exalted and disinterested.

Counsel argued that the object to be obtained is high and holy. To redeem an unfortunate class from ruin, degradation, and a fate worse than death, is a noble and christian work. The laborers in such a cause deserve universal sympathy.

The law does not manifest sympathy, but dispenses evenhanded justice. Enthroned in its majesty, it smiles and frowns upon all alike. Submission to its authority is incumbent upon all.

The judgment of the court below is affirmed.

*Judgment affirmed.*