[Chavannah v. State.]

# Chavannah v. The State.

### Indictment for Carrying on Illegal Lottery.

*Lottery; what is " device of like kind."* — Where a wheel is revolved on a pivot, or axis, having a fixed index attached to it, which, when the wheel stops, points to one of the figures on its face, corresponding with other figures on cards, checks, or "paddles," which are sold to the players before each revolution of the wheel; the holder of the check, or "paddle," which has on it the number corresponding with that to which the index points when the wheel stops, winning a greater sum than the price paid for it, and the others losing, — that is a " device of like kind " with a lottery (Rev. Code, § 3616), and within the prohibition of the statute against illegal lotteries.

FROM the City Court of Mobile.

Tried before the Hon. C. F. MOULTON.

The indictment in this case charged that, before the finding thereof, Hugh Chavannah " set up, or was concerned in setting up or carrying on a lottery, without the legislative authority of this State." " On the trial," as the bill of exceptions states, " the State proved that the defendant conducted and carried on a game described as follows : There are three pieces of timber fastened together at the top, and spreading out at the bottom, so as to stand upright. The piece in front is perpendicular, and has a pivot inserted in it, on which a wheel revolves at regular intervals. On the face of this wheel numbers are painted, from one up to sixty. In the centre of the space occupied by each number, a knob, about two inches long, stands out from the face of the wheel, and perpendicular thereto. A spring indicator is attached to the same piece of timber with the wheel, but above it, so that its end will touch each knob as the wheel revolves, but without materially retarding its revolutions. The drawing, or game, is done as follows : the person who conducts the game sells ' paddles,' twelve in number, on each of which are five numbers, corresponding with five of the numbers on the wheel ; but the same number is not on any two ' paddles.' The conductor revolves the wheel ; and when it stops, the number to which the spring indicator points wins the money, which is always a fixed amount, being ten times the sum paid for the ' paddle ' by the purchaser of the winning number, or the amount paid for all the ' paddles,' less twenty per cent. The wheel is solid, and no numbers are put into it and drawn out, but the numbers are on the outside of the wheel. Two witnesses of the State testified that the game resembled roulette about as much as the ordinary lottery drawing, but different from both in some respects ; that it might be considered in the nature of a lottery, as it is strictly a game of chance ; that but one person could win at it, at any one turning of the wheel ; that it did not resemble the glass-wheel lottery, generally used

[*Chavannah v. State.*]

in the matter of drawings, as the players had to be present; that the 'paddles' were taken up by the conductor after each revolution of the wheel, and sold again for the next turning; that no record of the winning numbers is kept; that the whole game, or whatever it is, is done at the wheel; and that some of the lottery men call it a 'minute wheel' lottery. It was proved that the defendant set up and carried on a wheel as above indicated; that he sold the 'paddles,' and distributed prizes thereby, in Mobile County, within twelve months next before the finding of the indictment."

" This being all the evidence, the court charged the jury in substance, as follows : ' The defendant is indicted for carrying on a lottery. If he is shown by the evidence in the case to have carried on a lottery in this county, within twelve months prior to the finding of the indictment, then he would be guilty as charged in the indictment ; and the punishment prescribed for the offence would be a fine of not less than one hundred, nor more than two hundred dollars. A lottery may be defined to be a game by which a person paying money becomes entitled to money, or other thing of value, on certain contingencies determinable by lot cast in a particular way by the manager of the game. The court charges you, as matter of law, that there is no law in this State authorizing the game of lottery. Look to the evidence, and from it say whether the defendant carried on the game of lottery. Was the game he played, as admitted by him, a lottery, or device of the like kind ? If you should find that it was a lottery, or device of the like kind, then it would be properly named a lottery, and properly so charged in the indictment, if the game assimilated a lottery, and was practised to evade the law prohibiting lotteries. Therefore say, from all the facts of the case, whether the game played, as shown by the evidence, was a lottery, or device like that of a lottery, or assimilated in its working or contrivance to that of a lottery. Was it a game of chance or hazard, determined by lots, or the casting of lots ? What was the game called by the defendant, or by those who were familiar with and practised it ? Should you, from all the evidence, and the law, entertain well-grounded doubt of the defendant's guilt, give him the benefit of it, and acquit him.' " To this charge an exception was reserved by the defendant.

PETERS, C. J. — The only question raised on this indictment is, whether the game represented by the evidence is a lottery, " or device of the like kind." If it is a lottery, it falls under the denunciation of our statute, and the accused was properly convicted. If it is otherwise, he should have been acquitted and discharged. The transaction represented in the

[Walker v. State.]

evidence is evidently a game of chance.   The good or bad for-
tune of the party making the risk did not depend for success
upon any skill of the player in the control of the event which
entitled him to win.   That depended wholly upon lot or chance.
Lot is defined to be " a contrivance to determine a question by
chance, or without the action of man's choice or will."   Web-
ster's Dict. Unabr.   When such a contrivance is applied to
gaming, where the chances are sold before the game is played,
it is a lottery under our Criminal Code.   Rev. Code, § 3616 ;
2 Bish. Cr. L. § 469 ;  Bill v. The State, 5 Sneed, 507.

It is true, that the manager did not determine the chance
by putting his hand into a box or wheel, and drawing out a
prize or blank, which corresponded by number with a ticket
already sold to a customer.   But he turned a wheel fixed to a
support, which was numbered, in certain compartments on its
face, to suit other numbers on certain devices, called "paddles."
These "paddles," which represented chances, were sold to the
player, in lieu of lottery tickets, as used in a regular lottery.
The wheel was traversed by a fixed index, which, when it stood
still, pointed to some figure on its face, which answered to a
like figure on some "paddle."   This correspondence of the
figures on the face of the wheel and the paddle entitled the
holder of the paddle to win.   Whether this was much or little
makes no difference.   To carry on the game or device, the
wheel was put in motion, by twirling it on its axle by the man-
ager or player ; and when it stopped, the fixed index attached
to the machine pointed to some number on the face of the
wheel.   If the number thus shown by the index corresponded
with some number on the paddle or paddles sold, the holder of
the paddle won ; if it did not, he failed.   Such a performance,
when a small sum of money is ventured for the chance of ob-
taining a greater sum, is the carrying on a lottery.   And so
one of the witnesses on the trial below called it.   It may be
somewhat nondescript, and may not yet have received a name
by which it can be definitely registered in the catalogue of
games ; yet it has all the essentials of a lottery, and it is for-
bidden by our statute.

The judgment of the court below is affirmed, with costs.


