### STATE v. J. D. PERRY.

(Filed 1 March, 1911.)

**1. Lottery—Greater Value—Definition—Chance.**

A lottery prohibited by law is a kind of gaming contract by which, for a consideration, one may by favor of the lot obtain something in return of a value superior to the amount or value of that which he risks.

**2. Same—Chance—Hazard.**

Chance is an essential element of a lottery, whether that chance be as to any return or merely as to the amount or value of the return; and where there is a hazard in which sums are ventured upon the chance of obtaining a greater value, the scheme partakes of a lottery—that is, something gained or won by lot.

STATE *v.* PERRY.

### 3. Same—Evidence.

It appears that the defendant in this case, indicted for conducting a lottery, had formed a club of fifty members, each of whom entered into an agreement with defendant and paid in their money from time to time, with the hope and expectation that they would be so fortunate or lucky as to win by lot a suit of clothes worth a sum greatly in excess of the amount paid by him. After their thirteenth drawing, every member who was not lucky enough to draw a prize sooner, was immediately entitled to a suit, if he had paid as agreed, but in the event of default in any two of these payments, consecutively, it was optional with the defendant to cancel the certificate of membership: *Held*, (1) the plan or scheme was a lottery within the meaning of the statute; (2) the certificate of membership was competent evidence to show the nature and form of the transaction in order to determine as to its legality.

APPEAL from *Ferguson, J.,* at February Term, 1911, of CRAVEN.

The defendant was indicted for conducting a lottery. He, with the other members of the Perry-Owens Shoe Company, organized the Perry-Owens Suit Club, which engaged in the business of selling clothing under the following plan, as shown by the certificate given to each member of the club:

"Perry-Owens Shoe Company's Suit Club shall consist of fifty (50) members. In consideration of each member paying into the general fund the sum of two dollars ($2) weekly for twelve weeks, and one dollar ($1) the week following, or less as explained below, each and every member shall be then entitled to and shall receive from us a twenty-five dollar ($25) tailor-made suit or overcoat. Each and every Friday evening at 8 o'clock there shall be held at our store a drawing, and the member whose name is drawn at that time shall be entitled to his suit or overcoat immediately. After the thirteenth drawing every member having made all payments shall be entitled to his suit or overcoat immediately. Members' certificates are transferable; but upon the failure of any member to make his payments for two consecutive weeks, the permanent cancellation of this certificate shall be optional with us."

Under this arrangement each member received a suit of clothes worth the full sum of $25, and there was no chance for

any member to lose anything. Twelve of the fifty members received suits for less than $25. No tickets were issued, and nothing was paid by any member for a chance. All sums paid in were credited to the several accounts, and there was a fixed maturity value. Under this arrangement the Perry-Owens Shoe Company received for each suit an average price of $22.12. Twelve suits were sold for $156, or $144 less than the selling price.

There was evidence tending to show that the defendant actually conducted the business according to the plan set out in the certificate, and that several of the members received suits of .clothes at much less than their value or their regular selling price, and the others paid full value for them. The defendant was convicted, and appealed.

*Attorney-General Bickett and G. L. Jones for the State.*
*W. D. McIver and M. H. Allen for defendant.*

WALKER, J., after stating the facts: The only question in the case is whether the selling of the clothes according to the plan or device, which we have described, constituted a lottery, for our statute upon the subject provides, among other things, that any person who shall open, promote, or carry on a lottery, by whatever name or style the same may be called or known, or who, by such ways and means, shall expose or set to sale any goods or chattels or any other thing of value, shall be guilty of a misdemeanor. Lotteries are a species of gaming. They were formerly permitted in some of the States, and even established and licensed by law, as a means of raising money for worthy objects; but their evils were so widespread, both in the woes inflicted on the weak-minded and credulous, who were induced to buy chances in them, to be followed by bitter disappointment, and in their baneful influence on those, termed lucky, who drew prizes, that, later, under the influence of a healthier public sentiment, they were generally forbidden. Bishop on Statutory Crimes (2 Ed.), sec. 951, where also we find a lottery defined as a scheme whereby one, in paying money or other valuable thing to another, becomes entitled to receive

from him such a return in value, or nothing, as some formula of chance may determine. In our case, the prospect of securing nothing is wanting, but this makes the scheme the more enticing. A definition which also has been generally accepted and which fits the facts disclosed in the record, is this: A sort of gaming contract, by which, for a valuable consideration, one may by favor of the lot obtain something in return of a value superior to the amount or value of that which he risks. *U. S. v. Olney,* 1 Abbott (U. S.), 275 (*s. c.,* 27 Fed. Cases, No. 15,918); Bishop on Stat. Crimes (2 Ed.), sec. 952 and note 2. In *Hull v. Ruggles,* 56 N. Y., 424, the Court adopts the following as the result of the approved definitions: " 'Where a *pecuniary consideration is paid,* and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery.' This definition is approved in *Wilkinson v. Gill,* 74 N. Y., 63; 30 Amer. Rep., 264, as the popular meaning of the word, and one proper to be adopted with a view of remedying the mischief intended to be prevented by the statutes prohibiting lotteries; and it is said: 'Every lottery has the characteristics of a wager or bet, although every bet is not a lottery.' " *Yellow-Stone Kit v. The State,* 88 Ala., 199. See, also, *Hudelson v. State,* 94 Ind., 426; *S. v. Mumford,* 73 Mo., 647; *Meyer v. State,* 112 Ga., 20; McLain's Cr. Law, sec. 1315; 25 Cyc., 1633; 5 Words and Phrases, 4245. In *Reg. v. Harris,* 10 Cox's Cr. Cases, 352, it is said not to be material whether the full value of the shilling, which it appeared in that case was paid by the subscribers, was or was not received by them, as in either event the scheme would come within the mischief of the acts prohibiting lotteries, inasmuch as they were induced to part with their money in the hope of obtaining, not only their alleged shilling's worth, but something of much greater value, the right to which was to be decided by chance. It will be seen by examination of the authorities that chance is an essential element of a lottery, whether that chance be as to any return or merely as to the amount or value of the return; and as thus considered, where there is a hazard in which

sums are ventured upon the chance of obtaining a greater value, the scheme partakes of the nature of a lottery—that is, something gained or won by lot. 5 Words and Phrases, pp. 4245 and 4246, where many cases are collected. The definition of the term "lottery," given above, has been approved by this Court. *S. v. Lumsden,* 89 N. C., 572.

In *Winston v. Beeson,* 135 N. C., 271, we had occasion to refer to this subject, and it was said that the word "lottery" had been variously defined, and, among other definitions, as a game of hazard, in which small sums are ventured for the chance of obtaining a larger value in money or other things; or a gaming contract by which, for a valuable consideration, one may by favor of the lot receive in return something of superior value to that which he risks, citing *S. v. Mumford,* 73 Mo., 659 (39 Am. Rep., 532); *S. v. Clark,* 3 N. H., 334 (66 Am. Dec., 723). By the turn of the wheel or some other like device, patrons of this defendant received a good return for a comparatively small outlay, the right to which was determined, not by skill or any legitimate effort, but by luck or chance. It is gambling, pure and simple, and has fallen under the ban of an enlightened public opinion and is condemned by the law. A case presenting facts like those under consideration has not been before this Court, but in some of the other States, having statutes prohibiting lotteries similar to ours, the courts have held that the scheme, as devised and executed by the defendant and his associates in business, is a lottery. It appeared in *S. v. Moren,* 48 Minn., 555, that clubs of forty persons each were formed by a merchant tailor for the disposition of suits of clothing, each of the stipulated value of $40, by lot, under nominal contracts of purchase, the price to be paid in weekly installments of $1 each, such payments entitling the holders of tickets to participate in weekly drawings by lot, with the chance of securing goods of the value of $40 at any drawing, without further additional payments than the weekly installments then paid. That case, and others which we will presently cite, were in all essential features like the one at the bar. *People v. McPhee,* 139 Mich., 687; *De Floran v. State,* 121

Ga., 593; *Grant v. State,* 54 Tex. Cr. Rep., 403.  It was further
held that a provision in the contract that each member of the
club should eventually receive a suit of clothes, when he should
have paid $40, if not previously drawn, or that he might with-
draw at any time and take out the value of money paid in on
the contract in merchandise, does not make the scheme any
less a lottery or convert it into an innocent enterprise, and
thereby take it out of the operation of the statute.  In our
case, it appears that the members of the club entered into the
agreement and paid their money from time to time, with the
hope or expectation that they would be so fortunate or lucky
as to win by lot a suit of clothes worth $25 for a small amount
paid by them.  It is true that in the case just cited from Min-
nesota, the Court construed a statute of that State, but the
definition of a lottery as given in that statute is, in substance,
but the definition of the law which has general application,
and the other cases cited were decided upon the generally ac-
cepted definition of a lottery.  In 25 Cyc., 1639, we find it
stated that, "Suit clubs, the members of which pay weekly dues
and have weekly drawings for suits, the unsuccessful members
being entitled to receive a suit eventually, after the payment
of a stipulated amount, or to withdraw and take out in trade
the installments which they have paid, are lottery schemes."

Applying the principle, as we find it settled by the authori-
ties, to the facts of this case, it cannot well be doubted that
each member of the Perry-Owens Suit Club invested $2 at each
weekly drawing upon the chance or venture that if luck favored
him he would win a suit of clothes worth $25 by the expendi-
ture of a much less sum of money.  This was in form and
effect a forbidden transaction and a lottery, as much so as if a
suit of clothes had been won by "the throw of the dice" or any
other method of gambling.  If you call it a gift enterprise, it
is still within the words and meaning of the statute (Rev., sec.
3726), as there is involved the element of chance that is suffi-
cient to condemn it, even if called by that name, the statute
prohibiting the distribution of gifts or prizes in such a way
upon tickets or certificates.  *Winston v. Beeson, supra.*  The

objection to the introduction of one of the certificates of membership was properly overruled. The evidence was competent to show the form and nature of the transaction in order to determine as to its legality.

No error.