STATE v. MARK LOWE.

(Filed 10 December, 1919.)

1. **Lotteries—Definition.**

A lottery is defined to be any scheme for the distribution of prizes, by lot or chance, by which one paying money or giving any other thing of value to another, obtains a token which entitles him to receive a larger or smaller value, or nothing, as some formula of chance may determine.

2. **Lotteries—Games of Chance—Selling Devises.**

By the use of a machine called a "merchandise vendor," cards were arranged in several parallel columns, each one calling for the sale of a collar button at five cents each. Every twentieth card called also for a fifty-cent box of candy. By operating a crank each purchaser received a card good for the collar button, and at every twentieth card he was entitled to a fifty-cent box of candy besides. The machine was so arranged that the operator could not tell whether he would receive only the collar button for which he had paid, or in addition, the candy. *Held*, the device was a gambling one within the intent and meaning of our statute, the chance being as to who would draw the twentieth card and receive the candy in addition to a collar button, which all received.

### 3. Same—Small Values.

The fact that a gambling device is for small values does not relieve it of its objectionable features, for upon the same principle one involving large amounts may be operated. It is the element of chance that makes it pernicious to public morals, which it is the object of our statute to prevent, and for this reason it is condemned.

INDICTMENT for carrying on and promoting a lottery, by means of a slot machine, tried before *Finley, J.,* and a jury, at July Term, 1919, of BUNCOMBE.

The jury returned a special verdict as follows:

"The defendant is a merchant in the city of Asheville, and used in connection with his business a machine called a 'merchandise vender,' which is so constructed as to hold a large number of cards in parallel columns and with a glass front. There are six of these columns of cards, and each card calls for a particular article of merchandise, and gives the price of such articles of merchandise. A prospective purchaser could purchase any of the articles of merchandise shown on such cards for the price stated thereon by pulling a slot which would remove such card from the machine. Six cards were displayed to a prospective purchaser, giving the articles and prices aforesaid, and the purchaser could draw out either of said six cards and obtain the articles of merchandise mentioned thereon by paying the price indicated on said card. As each card is drawn out, another card takes its place. In each instance the purchaser sees the card before it is withdrawn from the machine, and knows the articles of merchandise called for and the price to be paid by him therefor, but until the card is withdrawn does not see the name of the article on the succeeding card. The machine operated by the defendant was arranged to vend collar buttons at 5 cents each, and all of the cords in said machine had the words 'collar buttons,' and the figure and word '5 cents' printed thereon, with the exception of certain cards, which had printed thereon the words 'One box of candy,' and the figure and word '5 cents.' The cards were so placed in said machine that every twentieth card to be drawn therefrom called for a box of candy, while all the other cards called for a collar button, and the defendant advertised that every twentieth card in the case would entitle the purchaser thereof to a box of candy. As the cards are drawn from the machine, they are presented to the defendant, who gives the purchaser the article called for on such cards, and collects from such purchaser the amounts stipulated on such cards. Each box of candy was worth 50 cents, but the price charged through the machine is 5 cents. The witness for the State went into the place of business of the defendant and to said machine, where he saw a card reading, 'One collar button, 5 cents,' and next to the machine he saw displayed in the showcase a large number of collar buttons, each of which

were regularly retailed for 5 cents, which he was informed were the collar buttons called for on the cards in said machine. The State's witness then drew one card from said machine with the words and figures 'One collar button, 5 cents,' thereon, which he presented to the defendant and thereupon received from the defendant one collar button, and paid the defendant 5 cents. If upon the foregoing statement of facts the court be of the opinion that the defendant is guilty, the jury so finds; but if upon the foregoing statement of facts the court be of the opinion that the defendant is not guilty, the jury so finds."

The court rendered the following judgment upon the verdict:

"Upon the coming in of the foregoing special verdict, the court is of the opinion that the defendant is not guilty of the charge contained in the bill of indictment, but that he is operating a gift enterprise, taxable under the Revenue Act as such, and that a license authorizing the defendant to carry on such gift enterprise is a protection against a criminal prosecution. It is, therefore, adjudged that the defendant is not guilty, and that he be discharged."

The State excepted and appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Mark W. Brown for defendant.*

WALKER, J., after stating the case: It seems to us that the special verdict places this case alongside of those we have held like schemes for making money by the lure of a chance to get something in exchange either for nothing or for something of much less value. It is a direct, though in this case not a very artful appeal, to the gambling instinct. The object of this gift enterprise, or whatever you may call it, to evade the law against conducting lotteries, while sufficiently visible, is attempted to be concealed under the artful contrivance of a transaction having the false garb of simplicity and fair dealing, but the law denounces it all the same.

A lottery, for all practical purposes, may be defined as any scheme for the distribution of prizes, by lot or chance, by which one, on paying money or giving any other thing of value to another, obtains a token which entitles him to receive a larger or smaller value, or nothing, as some formula of chance may determine. This definition has generally been approved by the authorities. *S. v. Lipkin*, 169 N. C., 265, 271; *S. v. Perry*, 154 N. C., 616, and cases cited; *Long v. State*, 74 Md., 565. We could not better show the real character of this new device than to reproduce, to some extent, what we have heretofore substantially said about such attempts to circumvent the law against lotteries in *S. v. Perry, supra,* and *S. v. Lipkin, supra:* "The sale of the ticket gave the

purchaser the chance to obtain something more than he paid for, and the other fact became an extra inducement for the purchase, making the general scheme more attractive and alluring. The difference between it and a single wager on the cast of a die is only one of degree. They are both intended to attract the player to the game, and have practically the effect of inducing others, by this easy and cheap method of acquiring property of value, to speculate on chances in the hope that their winnings may far exceed their investment in value. This is what the law aims to prevent in the interest of fair play and correct dealing, and in order to protect the unwary against the insidious wiles of the fakir or the deceitful practices of the nimble trickster. Call the business what you may, a 'gift sale,' 'advertising scheme,' or what not, it is none the less a lottery, and we cannot permit the promoter to evade the penalties of the law by so transparent a device as a mere change in style from those which have been judicially condemned, if the gambling element is there, however deep it may be covered with fair words or deceitful promises. If it differs from ordinary lotteries, it is chiefly in the fact that it is more artfully contrived to impose upon the ignorant and credulous, and is, therefore, more thoroughly dishonest and injurious to society. So far as those who manage schemes of this character can be supposed to give the credulous persons who deal with them any chance whatever of a return in greater value for their investment, the chance lies in the purchase of the right to participate in the favor offered or held out to tempt the gambling instinct, and thereby to prosper the business of the unlawful concern. All pay them money, at least in part, for the chance of winning a prize of greater or less value in proportion to what they hazard, however it may be glossed with some apparent safeguard against loss. Many will take the chance of the play, not expecting to continue the payments if they should lose at the first, second, or third attempt, or at some later period. According to every correct idea of legal definition or conception, this must be gaming within the meaning of the law, whether we construe it in letter or in spirit. All new artifices designed to evade and cheat the law, and entrap the unwary or ignorant, are but aggravations of the offense, and the more ingenious and deep-laid they are, the greater the wrong," citing *Dunn v. The People,* 40 Ill., 465; *Bell v. State,* 37 Tenn. (5 Speed), 507; *Deflorin v. State,* 121 Ga., 593; *State v. Moran,* 48 Minn., 555; *Myer v. State,* 112 Ga., 20; *State v. Clarke,* 33 N. H., 329.

The *Austrian Bond cases* illustrate the idea of the law as to what is a lottery. It was said of the chance feature, involved in their sale and purchase, by the Court in *Ballock v. State,* 73 Md., 1 (8 L. R. A., 671), and approved by the highest Federal Court in *Horner v. United States,* 147 U. S., 449 (37 L. Ed., 237), that at some uncertain period determined by the revolution of a wheel of fortune, the purchaser of a bond does get his money repaid; but we do not think this deprives the thing

of its evil tendency, or robs it of its lottery semblance and features.  The inducement for investing in such bonds is offered of getting some "bonus" large or small, in the future, soon or late, according to the chances of the wheel's disclosures.  The investment may run one year or it may run thirty years, according to the decision of the wheel.  It cannot be said this is not a species of gambling, and that it does not tend in any degree to promote a gambling spirit and a love of making gain through the chance of dice, cards, wheels, or other method of settling a contingency. It certainly cannot be said that it is not in "the nature of a lottery," and that it has no tendency to create desire for other and more pernicious modes of gaming.  Our statute does not justify a court, expressly directed to so construe the law as to prevent every possible evasion, whether designedly or accidentally adopted, in deciding a thing is not a lottery, simply because there can be no loss, when there may be very large contingent gains, or because it lacks some element of a lottery according to some particular dictionary's definition of one, when it has all the other elements, with all the pernicious tendencies, which the State is seeking to prevent.  After discussing the *Austrian Bond cases,* the Court held in the *Horner case, supra,* that it is not necessary, however, that the consideration moving to the holder of the ticket or chance be free from any element of certainty.  That every purchaser of a ticket or chance is to be repaid in something definite and certain in addition to the chance feature does not make the scheme any the less a lottery. "The element of certainty goes hand in hand with the element of chance, and the former does not destroy the existence or effect of the latter." The same was, in effect, said by us in *S. v. Perry, supra,* and *S. v. Lipkin, supra.*

As to what has been held to be lotteries by the courts of the several States, reference may be made to *Com. v. Chubb,* in the general court of Virginia, 5 Rand. (Va.), 715; *Dunn v. People,* 40 Ill., 465, where it was said that the character of the transaction would not be changed by assuming that the ticket represented an article of merchandise intrinsically worth the amount which the holder thereof would be obliged to pay, and that if every ticket in any ordinary lottery represented a prize of some value, yet if those prizes were of unequal values, the scheme of distribution would still remain a lottery; *Thomas v. People.* 59 Ill., 160, where a ticket was a receipt for money in payment for the delivery of a copy of an engraving, and for admission to certain concerts and lectures, for which it was sold, and money was to be distributed in presents amounting to a certain number, to the purchasers of engravings, and it was held that that was a scheme for the distribution of prizes by chance, and constituted a lottery, it being apparent that some of the purchasers would fail to receive a prize, and that even if the ticket to the concerts and

lectures, and the engraving, were intrinsically worth the price paid, the scheme would still be a lottery; *Chavannah v. State,* 49 Ala., 396, where it was held that the venturing of a small sum of money for the chance of obtaining a greater sum was a lottery; *Com. v. Sheriff,* 10 Phila., 203, where it was said that whatever amounted to the distribution of prizes by chance was a lottery, no matter how ingeniously the object of it might be concealed; *Holoman v. State,* 2 Tex. App., 610, where it was held that selling boxes of candy at fifty cents each, each box being represented to contain a prize of money or jewelry, the purchaser selecting his box in ignorance of its contents, was a device in the nature of a lottery; *S. v. Lumsden,* 89 N. C., 572, where a like device was held to be a lottery, and *Com. v. Wright,* 137 Mass., 250. Cases in England are to the same effect. In *Reg. v. Harris,* 10 Cox, C. C., 452, it was held that a lottery in which tickets were drawn by subscribers of a shilling, which entitled them at all events to what purported to be of the value of a shilling, and also to the chance of a greater value than a shilling, was an illegal lottery within the statute. In *Sykes, v. Beadon,* L. R., 11 Ch. Div., 170, 190, there were holders of certificates, who subscribed money to be invested in funds which were to be divided amongst them by lot, and divided unequally, that is, those who got the benefit of the drawings received a bond bearing interest and a bonus, which gave them different advantages from the persons whose certificates were not drawn; and it depended upon chance who acquired the greater or the lesser advantage. The scheme was held to be a subscription by a number of persons to a fund for the purpose of dividing that fund among them by chance, and unequally; and Sir George Jessel, Master of the Rolls, characterized the scheme as a lottery. In *Taylor v. Smetten,* L. R., 11 Q. B. Div., 207, packets were sold, each containing a pound of tea, at so much a packet. In each packet was a coupon entitling the purchaser to a prize, and that fact was stated publicly by the seller before the sale, but the purchasers did not know until after the sale what prizes they were entitled to, and the prizes varied in character and value. The tea was good and worth the money paid for it. It was held that the transaction constituted a lottery within the meaning of the statute.

With these guides before us, let us examine the particular facts of this case and apply what appears to be the settled law, referring first to *S. v. Perry, supra,* where it is said: "By the turn of a crank patrons of this defendant received a good return for a comparatively small outlay, the right to which was determined, not by skill or legitimate effort, but by luck or chance. It is gambling, pure and simple, and has fallen under the ban of an enlightened public opinion, and is condemned by the law." The scheme here is a simple one, and the amount of possible gain very small; but if it may be applied legitimately to "collar buttons and a box

of candy," it may as well be applied to houses and lots, or to any other valuable property. We do not understand that the relative amount of gain in any sense fixes the criminality of such devices. As shown in the above extract, the test is the venturing of small sums of money upon the chance of obtaining a larger value. This definition certainly shows that the scheme here was a lottery within the meaning of our statute. There were columns of cards in the machine, it is stated, with a glass front so arranged that only one card could be seen. Upon that card was printed the article to be purchased and the price. The proposed purchaser, by pulling a slot, removes the card from the machine and takes it to the merchant, to whom he pays the price and receives the article. The machine is called a "merchandise vender." So far the transaction appears to be perfectly innocent. As a matter of fact, however, using the evidence in this case as a basis for further discussion, when the purchaser moves the card from the machine another card drops down in its place. The cards were so arranged that nineteen of them had printed on them "Collar button, 5 cents," while every twentieth card, though costing only 5 cents, entitled the holder to a box of candy worth 50 cents. The element of chance here is that the purchaser of a collar button for 5 cents may, under a certain contingency, receive a box of candy worth fifty cents for only five cents. It seems that the judge had some idea that because the recurrence of a box of candy was automatically fixed to be at regular and invariable periods, or intervals, that, therefore, there was no element of chance in it so far as the merchant was concerned. This suggestion, however, is fully met by *S. v. Lipkin,* 169 N. C., 265. In that case there was not only no element of chance in the scheme, so far as the seller was concerned, but he himself exercised an option as to which one of his purchasers should receive the prize. As was said in that case: "No sooner is a lottery defined, and the definition applied to a given state of facts, than ingenuity is at work to evolve some scheme of evasion which is within the mischief, but not quite within the letter of the definition. But, in this way, it is not possible to escape the law's condemnation, for it will strip the transaction of all its thin and false apparel and consider it in its very nakedness. It will look to the substance and not to the form of it, in order to disclose its real elements and the pernicious tendencies which the law is seeking to prevent. The Court will inquire, not into the name, but into the game, however skillfully disguised, in order to ascertain if it is prohibited, or if it has the element of chance. It is the one playing at the game who is influenced by the hope enticingly held out, which is often false or disappointing, that he will, perhaps, and by good luck, get something for nothing, or a great deal for a very little outlay. This is the lure that draws the credulous and unsuspecting into the deceptive scheme, and it is what the law denounces as wrong and

demoralizing." The defendant in that case claimed that his device was solely for advertising purposes, but the Court held generally that the element of chance necessary to constitute a lottery need not always consist in the selection of the beneficiary by lot, but that it is sufficient if, at the time of the purchase of the right to draw, there is a chance that the purchaser will receive more or less according to some event then undetermined and not subject to be foreseen or controlled by the purchaser. In this case the element of chance is removed but one degree from the act of the purchaser in taking out the card on which is printed "Collar button, 5 cents." When he takes out this card another falls immediately in its place, and he knows whether that is for a collar button or for a box of candy. This, it seems to us, is far from making the scheme innocent, but makes it more vicious. It is the chance that the collar button card may be succeeded in one, two, or three numbers by the box of candy card, which makes the lure stronger and more tempting. It is evident that this was a scheme devised to sell collar buttons, at a good profit, of course, by luring purchasers on with the hope of gain. The merchant does not take any risk of loss; on the contrary, even when he gives a box of candy for 5 cents, the profit he has made on the sale of nineteen collar buttons not only enables him to pay for the machine, but to recoup any loss on the candy.

We suppose that there are still some left who will continue to experiment with this law against the lottery, one of the worst and most demoralizing forms of gambling, because it induces and inveigles others to become victims of its debasing tendencies, and fosters the evil habit of trying to get something for nothing, in order to make riches quickly and by what is mistakenly supposed to be the shortest and easiest method. When once imbued with the spirit of this sort of gambling it leads to other evils of a more wicked character, and more dangerous and hurtful to the general public, who are the innocent sufferers.

This cunningly devised instrument, called by the seductive and misleading name of "merchandise vender," is worked by a slot and crank, instead of a "wheel of fortune." A patron buys a card for five cents— not knowing how many have bought before him—in the hope that by mere chance he may become the fortunate holder of the lucky card. He will get a collar button for the five cents he invests, and may get something more, valued at fifty cents. In other words, for five cents he may, if his luck is good, "win" fifty cents worth of property, in the form of a box of candy. The case, in this aspect, is not at all different in principle from *S. v. Lumsden,* 89 N. C., 572, and is much like it in its facts. It appeared there that the defendant sold to customers small boxes of candy, of trifling value, for the chance or opportunity of designating one of certain pictures, conveniently arranged in his place of business, be-

STATE v. LOWE.

hind some of which were small sums of money, and behind others a card on which was the letter "C," the purchaser getting either the money or the card, as he may select; but if he got a card, he became entitled to another box of candy.   The Court held that the scheme constituted a lottery, and was in clear and open violation of our statute, citing *S. v. Bryant,* 74 N. C., 207.   *Judge Settle,* in the last cited case, said that buying lottery tickets was not then indictable, and the defendant could not, therefore, be convicted, but the chief offender could be, and that "the enterprise described in the special verdict is a lottery, and a lottery is a species of gambling, and gambling is immoral, and is denounced by statute."

If there were no element of chance in this new—though not very novel scheme, but a slight variation from others which have been unsuccessfully tried—it would attract no customers and would work no harm to the public, but with the element of chance, which too plainly exists to be concealed even from an unsuspecting jury, or court, it is a clear menace to public morals.

The manager of a device, such as that described in this case, who invites others to take a chance at the play, is guilty under the statute of conducting a lottery, as much so as if the risk was the same as in throwing dice, or in the turn of the cards in poker or faro.   It is not the degree of risk, whether great or small, that determines the unlawful element in the scheme, but the mere chance of winning appeals to the cupidity of others, and tempts them to try their luck, and play at the game.

However these attempts to evade the statute may be concealed, the law will uncover them, and, in order to prevent their repetition, will lay its hand heavily upon the perpetrator, as it should do.   No more effective way of repressing crime has ever been devised than swift, adequate, and, above all, certain punishment, especially for those who resort to evasion in order to escape the penalty.   The frequency of such attempts calls for vigorous treatment.

The judgment of the court is reversed, and set aside, a verdict of guilty will be entered upon the special findings, and such other proceedings had as the law provides.

Reversed.

CLARK, C. J., concurring.

CLARK, C. J., concurring: The amounts involved in this case are very small, but the principle is that of a lottery, and, if admissible, can be used in larger enterprises.   It is true that the number who can receive a prize is fixed at one in twenty, but the element of chance is as to who shall be the twentieth man.

In the Texan War for Independence against Mexico some 250 Texans (10 of them from this State) surrendered as prisoners of war at Mier,

and were marched off into the interior. At Salado, 25 March, 1843, they were marched by an urn which contained a black bean for every nine white, and those who drew black beans were drawn up in line and instantly shot by a firing squad. Thomas J. Green's "Mier Expedition," 170. In this "Lottery of Death" the number doomed was definite, one in ten, but the chance as to who should be the tenth man was a gamble with death. The principle that selects by chance one in twenty for a prize is exactly the same that selects one man in ten for instant death. There is no uncertainty as to the percentage who shall draw the black bean or the prize. The gamble is in designating, by chance, the persons.