[Criminal No. 522.  Filed March 16, 1922.]

[204 Pac. 1029.]

## In the Matter of the Application of H. E. GRAY for Writ of Habeas Corpus. H. E. GRAY, Appellant, v. JOHN MONTGOMERY, Sheriff of the County of Maricopa, State of Arizona, Respondent.

1. GAMING—CANDY IS NOT "OTHER REPRESENTATIVE OF VALUE" WITHIN STATUTE.—Within Penal Code of 1913, section 319, as amended by Laws of 1919, Appendix, page 12, making it an offense to conduct devices to be played for money, checks, or any other representative of value, the expression "other representative of value" is limited to tokens representing money or value in the form of money, so that playing for candy is not an offense thereunder.

2. HABEAS CORPUS — DISCHARGE REFUSED WHERE COMPLAINT STATES OFFENSE UNDER A STATUTE OTHER THAN THAT INTENDED.—Discharge from custody under a warrant of arrest will be denied in *habeas corpus* proceedings, where the complaint, though it did not charge an offense under Penal Code of 1913, section 319, as amended by Laws of 1919, Appendix, page 12, as intended by the pleader, did charge the offense of conducting a lottery under section 325.

3. LOTTERIES—"LOTTERY" INVOLVES CONSIDERATION, CHANCE, AND PRIZE. A "lottery" within Penal Code of 1913, section 323, is a scheme for the distribution of prizes by chance among persons who have paid or agreed to pay a valuable consideration for the chance to obtain a prize, and involves the three elements of consideration, chance, and prize.

4. LOTTERIES—CANDY PUNCHBOARD HELD A "LOTTERY."—A punchboard whereon were collar buttons covering certain numbers which were sold to purchasers, who were given candy in addition to the collar buttons if they uncovered certain specified numbers, is a lottery, the conduct of which is prohibited by Penal Code of 1913, section 323.

3.  What constitutes a lottery, notes, 16 Am. St. Rep. 42; 1 Ann. Cas. 91; Ann. Cas. 1917D, 144.

5. LOTTERIES — FACT THAT EVERY PURCHASER RECEIVES SOMETHING DOES NOT PREVENT SCHEME FROM BEING LOTTERY.—The fact that every purchaser of a chance to obtain a prize receives something of value, or even receives full value for his payment, does not prevent the scheme from being a lottery.

APPEAL from an order of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Order affirmed.

Messrs. Baker & Whitney, for Appellant.

Mr. W. J. Galbraith, Attorney General, and Mr. F. W. Perkins and Mr. George R. Hill, Assistant Attorneys General, for Appellee.

FLANIGAN, J.—This is an appeal from an order of the superior court of Maricopa county, refusing to discharge the appellant on a writ of *habeas corpus*. In his application for the writ the appellant alleged that he was imprisoned by virtue of a warrant of arrest issued out of the justice court of East Phoenix precinct of Maricopa county, on a complaint filed in that court charging him with the crime of gaming, the charging part of which reads as follows:

"The said H. E. Gray on or about the twenty-sixth day of August, 1921, and before the filing of this complaint, at —— precinct, in the county of Maricopa, state of Arizona, did then and there willfully and unlawfully open, carry on and conduct as owner and proprietor thereof at his place of business in the city of Phoenix, county of Maricopa, state of Arizona, a certain game, then and there played by means of a board of a like character to a punch board for money, checks, and other representatives of value, to wit, candy, and operated and played as follows, to wit: Said defendant then and there exhibited to his customers and to the public a board containing six hundred

5. Whether scheme for accumulating money by payments of number and distributing it in order of number of certificate is a lottery, note, 13 L. R. A. (N. S.) 1096.

(600) gold-plated collar buttons, and on said board under each of said collar buttons was a number, and said board was so played and operated by defendant that boxes of candy were given as premiums or gifts to persons exposing certain numbers on said board after said persons had purchased one or more of said collar buttons at the price of ten cents each; that said candy so given to said persons purchasing said collar buttons and exposing certain numbers was given under the pretext of advertising, contrary to the form,'' etc.

It is contended that the said warrant and process are void and not authorized by law because the complaint fails to state facts sufficient to show the commission of a public offense. Appellant properly concedes that no merely formal defects of the complaint may be considered in this proceeding, but that we should consider rather the substantial allegations thereof.

On this appeal, the controversy was made to hinge upon the sufficiency of the facts alleged to state a public offense under section 319 of the Penal Code, as amended, which reads:

''Every person who shall deal, carry on, or open, or cause to be opened, or who shall conduct, either as owner, proprietor or employee, whether for hire or not, any game of faro, monte, roulette, lasquenet, rouge et noir, rondo, vingt-un or twenty-one, poker, stud poker, draw poker, bluff, fan tan, thaw, seven and one-half, chuck-a-luck, blackjack, 'panginki,' or any similar game whatsoever, played with cards, dice, or any other device, and every slot machine, punch-board, or machine of like character, whether the same be played for money, checks, credits or any other representative of value within the state of Arizona; and every person who shall participate in any of the above-enumerated games dealt, carried on, opened or caused to be opened by any other person in the state of Arizona, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than one hundred dollars, nor more than

three hundred dollars, or by imprisonment for not more than six months or by both such fine and imprisonment.'' See Referendum Measures. Appendix to Session Laws 1919, p. 12.

It is contended by appellant that as the game is alleged to have been played for candy, and as candy is neither ''Money, checks, credits, or any other representative of value,'' within the meaning of the words as used in the section quoted, that no offense is stated. We agree with this contention, but in view of the disposition made of the case we shall not extend this opinion by discussing that phase of the matter at any length. The history of the enactment is persuasive to show that it was not intended by these words to prohibit the playing of these games for property when not used as a token of value. It is common knowledge that such games are usually played either for money, or for checks, credits, markers, or tokens representing money, or value in the form of money, and we may assume that the practice of playing these games for property, which in itself has value, was not sufficiently prevalent, or of such potency for evil, as to call for condemnation in the statute quoted. However that may be, we are bound by the law as it is written. *Ejusdem generis* is the applicable principle. See *Ex parte Williams,* 7 Cal. Unrep. 301, 87 Pac. 565.

Notwithstanding this conclusion, we are satisfied that the complaint, though not very aptly drawn, does state facts showing the commission of a public offense prohibited by section 325 of the Penal Code, which reads:

''It shall be unlawful for any person, by himself, or another, to keep, maintain, employ or carry on any lottery, or lottery scheme or device, or raffle within this state. Any person who shall violate any of the provisions of this section shall be guilty of a misdemeanor.''

We have not had the advantage of a discussion of this phase of the case in the briefs, or other argument of counsel. Because of that omission we have been very careful to confirm our own views by a somewhat extensive research of the authorities. If the complaint fairly states facts sufficient to show the commission of a public offense by appellant, it is not only the performance of a function we cannot abnegate but our duty so to declare, and to uphold the ruling of the lower court refusing to discharge appellant from imprisonment.

The statute (section 325), while condemning lotteries, lottery schemes and devices, does not define the meaning of such words. Where not defined by statute it is settled that the word "lottery" cannot be regarded as having any technical or legal signification different from the popular one. And statutes prohibiting lotteries should be construed with a view to remedying the mischief intended to be prevented, and to suppress all evasions for the continuance of the mischief. *State* v. *Mercantile Assn.,* 45 Kan. 351, 23 Am. St. Rep. 727, 11 L. R. A. 430, 25 Pac. 984; *Yellow-Stone Kit* v. *State,* 88 Ala. 196, 16 Am. St. Rep. 38, 7 L. R. A. 599, 7 South. 338; *State* v. *Clark,* 33 N. H. 329, 66 Am. Dec. 723.

The courts will look to the substance and actual operation of the scheme or device charged to be a lottery to determine whether it possesses that character. *State* v. *Nebraska Home Co.,* 66 Neb. 349, 103 Am. St. Rep. 706, 1 Ann. Cas. 88, and note, 60 L. R. A. 448, 92 N. W. 763.

In the sense used in the criminal law, lotteries are a species of gaming. *State* v. *Perry,* 154 N. C. 616, 70 S. E. 387. And so in our law, as section 325, *supra,* is a part of chapter 10, title 9, part 1, of our Penal Code, the chapter being entitled "Gaming."

Generally, every scheme for the distribution of prizes by chance is a lottery. *State* v. *Overton,* 16 Nev. 136. And a lottery, as such, embraces the elements of procuring through lot or chance, by the investment of a sum of money, or something of value, some greater amount of money or thing of greater value. *United States* v. *Fulkerson* (D. C.), 74 Fed. 619.

The following definition of a lottery has received approval: Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery. *Hull* v. *Ruggles,* 56 N. Y. 424; *Wilkinson* v. *Gill,* 74 N. Y. 63, 30 Am. Rep. 264; *State* v. *Mercantile Assn., supra.* In *United States* v. *Olney,* 1 Abb. 275, Fed. Cas. No. 15,918, a "lottery" is defined to be a sort of gaming contract by which, for a valuable consideration, one may by favor of the lot obtain something in return, of a value superior to that which he risks. See, also, *Fleming* v. *Bills,* 3 Or. 286-289.

Perhaps as satisfactory a definition as any is that given by Cyc., volume 25, page 1633:

"A lottery is a species of gaming which may be defined as a scheme for the distribution of prizes by chance, among persons who have paid, or agreed to pay, a valuable consideration for the chance to obtain a prize."

For the purposes of this case, the above definition may be adopted.

Proceeding from definition to application: In the cases cited in this opinion will be found many examples of various schemes held to be lotteries, or lottery schemes, or devices. We give a few by way of illustration: Sales of boxes of candy containing prizes in money or jewelry, of unequal value, *Holoman* v. *State,* 2 Tex. App. 610, 28 Am. Rep. 439; sales

of envelopes containing tea, some of which contained tickets calling for other goods by way of prizes, *State* v. *Boneil*, 42 La. Ann. 1110, 21 Am. St. Rep. 413, 10 L. R. A. 60, 8 South. 298; sales of merchandise, when with every purchase of more than fifty cents in value, purchaser received key, one of the keys unlocking a box containing a prize in money, *Davenport* v. *City of Ottawa*, 54 Kan. 711, 54 Am. St. Rep. 303, 39 Pac. 708; disposition of suits of clothes to members of a club, by weekly drawings, the winner to be discharged from further liability to pay the installments required of remaining members, *State* v. *Perry, supra;* scheme to induce sale of cereal, "Mother's Oats," by placing in each package one of the letters spelling "Mother's" the letter "O" being in only 1 of 500 packages sold, the completed word calling for a prize, *United States* v. *Jefferson* (C. C.), 134 Fed. 299; sale of books designated by numbers, some of which called for prizes, *State* v. *Clark, supra.*

In every case of a lottery there must be present the elements of consideration, chance, and prize. 17 R. C. L. 1222.

Under the definitions quoted, and the examples to be found in the cases cited herein, we have no doubt the scheme adopted by the appellant was a lottery. The elements of consideration, chance, and prize are present. That consideration was paid and prizes given is not questioned. Concerning the element of chance, it is to be noted that the numbers were concealed under the buttons, and that certain of these numbers, when exposed by purchasers, called for redemption in boxes of candy. Discussing this scheme, it is said in the brief for appellant: "The board decides who gets the candy as premiums." And—

"The buttons are all identical and have nothing whatever to do with indicating whether or not the purchaser shall receive, in addition to his regular

purchase, for which it is conceded he receives full value for his money, a box of candy.''

It is very plain that but for such element of chance and uncertainty the board would not have been set up or played.

In the briefs, some emphasis is placed upon the fact that the collar buttons exhibited were worth the prices paid, and that the purchaser could sustain no loss. But the mere fact that there are no blanks, and that every subscriber is sure to get something as the actual or ostensible equivalent in value for the consideration paid, does not relieve the scheme of its character as a lottery, where the prizes given are of unequal value. *State* v. *Willis*, 78 Me. 70, 2 Atl. 848; *State* v. *Overton, supra; Horner* v. *United States,* 147 U. S. 449, 37 L. Ed. 237, 13 Sup. Ct. Rep. 409 (see, also, Rose's U. S. Notes); *Ballock* v. *State*, 73 Md. 1, 25 Am. St. Rep. 559, 8 L. R. A. 671, 20 Atl. 184; *People* v. *McPhee,* 139 Mich. 687, 5 Ann. Cas. 835, 69 L. R. A. 505, 103 N. W. 174; *State* v. *Boneil, supra; Davenport* v. *City of Ottawa, supra; State* v. *Perry, supra; State* v. *Lipkin,* 169 N. C. 265, Ann. Cas. 1917D, 137, L. R. A. 1915F, 1018, 84 S. E. 340; *Meyer* v. *State,* 112 Ga. 20, 81 Am. St. Rep. 17, 51 L. R. A. 496, 37 S. E. 96; *United States* v. *Wallis* (D. C.), 58 Fed. 942; *Dunn* v. *People,* 40 Ill. 465; *People* v. *American Art Union,* 13 Barb. (N. Y.) 577; *Randle* v. *State,* 42 Tex. 580; *Fitzsimmons* v. *United States,* 156 Fed. 477, 13 L. R. A. (N. S.) 1095, 84 C. C. A. 287.

As remarked in *State* v. *Lipkin, supra,* that the purchaser is to secure something only makes the scheme more enticing.

As the complaint alleges that the appellant carried on and conducted, as owner and proprietor, a lottery game, scheme, or device, it was authority sufficient for the issuance of the warrant of arrest, and the or-

der of the lower court refusing to discharge him from imprisonment thereunder was correct.

The ruling is therefore affirmed.

ROSS, C. J., and McALISTER, J., concur.